[No. 1423.    Decided July 18, 1894.]

JOSEPH S. ALLEN v. L. R. GRIMES, *State Auditor.*

STATE CAPITOL BUILDING FUND — ISSUANCE OF WARRANTS UPON.

Under the enabling act of congress granting to the State of
Washington 130,000 acres of public lands for the erection of public
buildings at the state capital, 65,000 acres of which have been
selected and are now held for sale by the state, and under the act
of March 21, 1893 (Laws, p. 462), creating a "state capitol building

fund," into which the proceeds derived from the sales of such granted lands are to be paid and making provision for the appropriation of certain sums therefrom for the erection of public buildings, it is the duty of the state auditor, although no moneys may have been accumulated in the fund, to issue warrants thereon to parties entitled, provided that such warrants express upon their face that they are drawn upon the "state capitol building fund". and are payable only as that fund may be accumulated from the sale of lands.

*Original Application for Mandamus.*

*Thomas Burke*, and *Joseph S. Allen*, for relator.

*James A. Haight*, for respondent.

The opinion of the court was delivered by

·  STILES, J.—This was a proceeding to require the respondent as state auditor to issue a warrant in favor of the relator upon the state capitol building fund, for services and expenses as a member of the state capitol commission. The respondent's refusal to issue the warrant is alleged to be based upon the fact that none of the lands granted to the state by the federal government for the erection of public buildings at the state capital have been sold, and that there is actually no money in said fund.   The attorney general defends upon the ground that, under the provisions of art. 8 of the constitution, the issuance of the warrant claimed would create a debt against the state which would come within the class specified in the third section of the article named, to wit, for some single work or object which had not been provided for by the submission of the question creating it to the people at a general election.

By the enabling act congress granted to the state 130,-000 acres of land for the erection of public buildings at the state capital.   This grant, as we view it, was in the nature of a trust imposed upon the state to select the number of acres granted and apply the proceeds of their sale

to the purpose mentioned.    In the prosecution of its trust the legislature, which is the executive hand of the trustee, the state, has provided in the first place for the selection and sale of the lands by the act of March 9, 1893 (Laws, p. 186).

The petition recites that upwards of 65,000 acres have been selected and the selections have been approved by the duly authorized agents of the United States; and that the appraised value of these lands is upwards of $1,300,000. In further pursuance of the trust, the legislature has provided for the erection of a state capitol building out of the funds to be derived from the sale of the lands mentioned, at a cost of not exceeding $1,000,000 (act of March 21, 1893; Laws, p. 462).    The latter act contains § 15, which is as follows:

"In order to carry out the provisions of this act there is hereby created a fund to be known as the 'state capitol building fund,' into which fund shall be paid the proceeds of all moneys derived from the sales of lands granted to the State of Washington for the purpose of erecting public buildings at the state capital, from which fund there is hereby appropriated the sum of $225,000 for the fiscal year ending March 31, 1894, and $275,000 for the fiscal year ending March 31, 1895: *Provided*, That no appropriation shall be made from any fund except the fund derived from the sale of lands granted for erecting public buildings at the state capital."

It thus appears that the intention of the legislature is to limit all payments of money expended for the erection of a state capitol building to the money actually derived from the sale of the lands granted by the government; and, to make the intention the more apparent, the proviso to § 15 prohibits any appropriation, or more properly, payment from any other fund.    The idea of the creation of a debt against the state is by the language used expressly negatived.    There is under the law absolutely no obligation resting upon the state to pay any sum whatever, and

those who may receive the auditor's warrants will be limited in their rights to the requirement of the proper officers to perform their duties as prescribed by the statute. Even were the law such that the state could be sued upon an ordinary contract the same as an individual, no cause of action could be stated against it by the holder of a warrant.

The object of the constitutional provisions mentioned was to insure economy in the management of the state's business affairs by taking away even from the legislature the power to create obligations on behalf of the state which would necessitate taxation to meet them. But in this case no such obligation is proposed and no taxation can result from the erection of the proposed building. The state has received a liberal gratuity from the national government in the shape of lands the proceeds of which must be devoted to a specific purpose. It is now attempting to carry out the object of the grant, and the only question is whether the legislature has authorized the officers having the business of erecting a capitol building in hand to anticipate the revenues to be derived from the sale of lands. More than half of the lands having been selected and the selections approved by the government, they have become the property of the state. An appraisement has been made which considerably exceeds the entire expense permitted for the proposed building. We are bound to presume that the officers to whom the duty of selling these lands is committed will perform their duty, and that in due course of time funds sufficient to meet all the demands arising from the erection of a capitol building will come into the possession of the state treasurer; and, therefore, the position of such warrants as may be issued before any funds of this class are actually in the treasury will be that which often occurs where public warrants are drawn upon a fund which has been provided for by law but which is not yet realized.

Under this condition of affairs, we see no valid objection to the auditor's issuing to the relator the warrant which he prays for, provided that it expresses upon its face the terms and conditions under which it is issued, viz., that it is drawn solely upon the state capitol building fund and payable only as that fund may be accumulated from the sale of lands.

Let the writ issue as prayed for.

DUNBAR, C. J., and ANDERS and HOYT, JJ., concur.