[No. 2578.  Decided July 9, 1897.]

THE GERMAN-AMERICAN SAVINGS BANK of *Burlington, Iowa, Respondent,* v. THE CITY OF SPOKANE, *Appellant.*

MUNICIPAL CORPORATIONS — STREET IMPROVEMENTS — LIABILITY OF GEN-
ERAL FUND — ENFORCEMENT OF ASSESSMENTS — MANDAMUS.

When a municipality has reached the limit of its indebtedness, there can be no general liability contracted or established on account of the expense of street improvements.

Where there is no power in a municipality to construct street improvements out of the general fund, it cannot be made liable for a failure to provide a special fund.

The holder of a warrant drawn upon a special fund to be raised from assessments made for a street improvement may by mandamus compel the city officers to proceed with the collection of the assessments.

In case the remedy by mandamus prove inadequate, a court of equity has power to make and enforce the assessment.

Where the cost of a street improvement is to be paid out of a special fund raised by the city from assessments upon the property benefited, there can be no recovery against the city for failure to cause such fund to be raised, as long as the assessment plan can be enforced in any way, although the city may have expressly contracted that it would proceed with the collection of the assessments in the shortest time possible. (*McEwan v. Spokane,* 16 Wash. 212, overruled).

Holders of warrants drawn by a city upon a special street improvement fund may compel the city officers to proceed diligently to collect the assessments from which the fund is to be raised, notwithstanding the city council may have provided for payment of the assessments in installments extending over a period of years.

*Plummer & Thayer*, for appellant.
*Kennan & Belden*, for respondent.

The opinion of the court was delivered by

Scott, C. J.—Plaintiff brought this action to recover the amount due on certain street grade warrants originally issued to one Massey and payable out of the Victoria street grade fund, and, having obtained a general judgment against the city therefor, the city has appealed.

The foundation of the plaintiff's right of action, as presented in the briefs, was the delay and negligence on the part of the city's officers in providing the fund. The court also found, and that issue seems to have been presented in the pleadings, that the right to enforce collection of the special assessments was lost. The appellant (defendant) contests this finding, but as the respondent does not seem to rely on it, we will not look into the evidence thereon at this time. It may become material, however, in the ultimate disposition of the case, and will be referred to later.

Questions relating to the character and enforcement of such liens have been before the court upon a number of former occasions, and our decisions thereon have, in an instance or two, been inconsistent and conflicting. It is a matter of common knowledge that most of the cities and towns here are heavily burdened with debt aside from these warrants, and furthermore that there is a large amount of this class of paper outstanding, and the question of the general liability of such municipalities therefor is of the utmost importance. Consequently the gravest responsibility rests upon the court to settle and determine, as far as possible, the principles governing such liability, if it exists, with certainty and precision, as the questions are presented. Owing to the paramount importance of the sub-

ject, and the various decisions thereon heretofore rendered, nearly all of which are in some measure involved in this and one or two other street warrant cases submitted and now before us for our consideration, we have deemed it advisable at this time to review to some extent some of the cases we have heretofore decided relating thereto, and also some cases from other states on the subject, for the purpose of definitely settling, if possible, a few principles. The matter may also call for a short notice of some other kindred questions discussed in those cases not necessarily involved in this one.

In *Baker v. Seattle*, 2 Wash. 576 (27 Pac. 462), the court held that such warrants, payable out of a particular fund, could not be considered as a general municipal liability with reference to the constitutional limitation on the amount of indebtedness a city could contract. There was no thought at that time that they ever could become such a liability here.

In *Soule v. Seattle*, 6 Wash. 315 (33 Pac. 384, 1080), the court held that where a city had reached its constitutional limit of indebtedness, it had no power to render itself liable for the cost of street improvements contracted for subsequent thereto, although the city failed to levy an assessment and provide a special fund to pay for such improvements, as it had contracted to do. The principle was also recognized that where there was a lack of statutory authority to construct such improvements by a general tax, or from the general funds of the city, or where there was a failure to acquire jurisdiction of the subject matter, there could be no general liability established against the city in any way. The city of Seattle had power to construct such improvement under its charter by a general tax. The city of Spokane has that power *(Stephens v. Spokane*, 11 Wash. 41), and it seems to be generally,

though not universally, true of the various towns and cities of the state.

It was also said in *Soule v. Seattle* that an action brought to establish a general liability against the city, where there had been a failure to provide the special fund, was not in the nature of an action *ex delicto*, but was for a breach of the original contract, or upon an implied agreement on the part of the city to pay in case of a failure to provide the special fund, where there was no express provision in the contract holding the city generally liable.

We will next refer to the case of *Stephens v. Spokane*, 11 Wash. 41 (39 Pac. 266), where a judgment had been rendered in favor of the city, upon a demurrer interposed to the complaint, and the cause was reversed here, the court holding that the delay upon the part of the city to provide the special fund as alleged was sufficient to establish a general liability. There was no contention that the city had lost its right to proceed with the assessments.

Thereafter, in *Thomas v. Olympia*, 12 Wash. 465 (41 Pac. 191), the court discussed and distinguished the cases of *Soule v. Seattle* and *Stephens v. Spokane, supra*, and held that where, in the case of a contract for street improvements to be paid out of a particular fund, the city had undertaken in good faith to collect the assessment but had been unable to do so, owing to decisions of the courts, and was proceeding to make a new assessment, it could not be held liable for the cost of the improvements out of its general fund; and that where the contract provided, as in that case, that the contractor would look only to the special fund, he had no right at all to proceed against the city generally for the negligence of its officers. When the case of *Stephens v. Spokane* was again before this court (14 Wash. 298, 44 Pac. 541), where the city had appealed from a judgment rendered against it upon the trial, the

court held that delay in providing the fund was not suffi-cient to enable the plaintiff to recover of the city, but that it must appear that there was a loss of power to further prosecute the assessment and that the city could not bind itself to create the fund within a certain time. Whatever inconsistency, if any, there may have been between these two cases is immaterial here.

In *McEwan v. Spokane*, 16 Wash. 212 (47 Pac. 433), the court held that where the city had contracted to pro-vide the fund in the shortest possible time under its char-ter and ordinances, and had failed to do so, and had un-reasonably delayed enforcing the assessments, it was liable generally, and that the city, and not the contractors, must look after the assessment and enforce its collection. The right to recover was placed on the ground of delay alone. There was no contention that the statute of limitations had run against all of the special assessments, but the right to recover was sustained as to all of the warrants regardless of such question.

In *Bank of British Columbia v. Port Townsend*, 16 Wash. 450 (47 Pac. 896), while it was in effect held that an action would lie against the city where there was a failure to provide the fund, there was no discussion of that question. The case was disposed of on a demurrer to the complaint. Although the complaint alleged that the right to prosecute the assessments was lost, no importance was attached to it. In fact the mooted questions were other than that as the opinion shows, and it was held that the complaint stated a cause of action. It was also held that, unless the contract was authorized by an ordinance, there could be no recovery. The most of these decisions were by a majority of the court only.

The case of *McEwan v. Spokane* is in straight conflict with the decision rendered in *Stephens v. Spokane*, when

it was last before the court, although there was no direct expressed intent to overrule it, and the same is true, but not in so great a degree, perhaps, of the case of *Bank of British Columbia v. Port Townsend.*

We will first note some of the propositions upon which there is no conflict in the decisions and which we think may safely be regarded as settled here. One is that there can be no general liability contracted or established when the municipality has reached the limit of its indebtedness. *Baker v. Seattle, supra; Soule v. Seattle, supra; Winston v. Spokane,* 12 Wash. 524 (41 Pac. 888).

The first two cases held that indebtedness of that character was not a general indebtedness and that the constitutional limitation did not apply. If such claims can subsequently become general liabilities against municipalities, serious complications are likely to arise, for in some instances the debt limit would undoubtedly be reached before all of such claims are provided for, and there might be some question as to which of them should be entitled to priority. If the contract in terms purported to bind the city generally and was lawfully entered into, the question should be determined with reference to the financial condition when such contract was made (*West v. Chehalis,* 12 Wash. 369, 41 Pac. 171, 50 Am. St. Rep. 896); and the priority of the respective times of execution would be controlling in determining the question as between the various contracts, where only a part of them could be made a general charge within the debt limit. Where the contract contained no such provision or no binding provision in that respect, and the right is founded on a breach of the contract in failing to provide the fund, a different question arises and it must be decided with reference to the time either when the delinquency arose or when it should be judicially determined. Unless the latter time governs, there might

be some question as to when the responsibility for the unreasonable delay becomes fixed, especially considering the fact that the city could not bind itself to provide the fund in a certain time, or in the shortest possible time, as has been sometimes attempted. *Stephens v. Spokane*, 14 Wash. 298.

Another proposition determined is that, where there was no power to construct the improvements in the first instance out of the general fund, the city cannot be made liable for a failure to provide the special fund. *Findley v. Hull*, 13 Wash. 236 (43 Pac. 28).

In a number of the foregoing cases one, and sometimes two, members of the court dissented or did not concur in the opinion, the grounds of disagreement generally not being stated, and of course they are not particularly important, but it may be well to observe that it was occasionally upon some point not discussed in the opinion, such as a different construction of the facts, or as to the application of the principle discussed to the case, which the non-concurring members thought would require a different holding. There may have been no disagreement as to the law announced in the opinion.

The next question we will consider is as to whether an unreasonable delay in collecting the special fund is sufficient to sustain a general recovery. The provision involved in this case is as follows:

" The city of Spokane Falls further agrees that it will proceed at once to levy a special tax or assessment upon the property fronting upon the street to be improved as aforesaid, for the payment of the sum aforesaid, and to complete the same and pay the sum aforesaid as herein provided, and the city expressly covenants and agrees that it will prosecute the business of levying and collecting said special tax or assessment without any delay whatever in

any part of the proceedings and within the shortest time possible under its charter and ordinances relating thereto."

There was no clause in the contract in terms binding the city generally to pay, and we have held that the city could not bind itself to provide the fund in a specified time. *Stephens v. Spokane*, 14 Wash. 298 (44 Pac. 541). So this clause did not add very much strength to the contract, for in the absence of it the city officers could doubtless be compelled to proceed diligently in collecting the fund.

We have held also that the warrant holders could mandamus the city officers to proceed to collect the assessment. *Soule v. Seattle, supra*, citing *Himmelmann v. Cofran*, 36 Cal. 411, which was a proceeding by mandamus. See, also, *State, ex rel. Hemen, v. Ballard*, 16 Wash. 418 (47 Pac. 970), which was a mandamus proceeding, where the relator was successful in obtaining a judgment against the city officers to proceed. Other authorities sustaining this proposition are *Reock v. Mayor*, 33 N. J. Law, 129; *Wren v. Indianapolis*, 96 Ind. 206, and Elliott on Roads and Streets, p. 437; and more might be cited.

There are some authorities against this proposition, one being the *Diamond Match Co. v. Powers*, 51 Mich. 145 (16 N. W. 314), where it was held that mandamus is not adapted to cases calling for continuous action but only to enforce a particular act. But if the remedy by mandamus proves inadequate or ineffective, or if for any other reason the proceedings could not be effectively enforced through the regular channels, we approve the doctrine laid down in *Soule v. Seattle, supra*, that the courts could make and enforce the assessment. There is no reason why an action in equity could not be effectual to enforce and protect the rights of all parties. Such a right has been recognized and enforced, notwithstanding the fact that mandamus would lie. *City of Louisville v. Hyatt*, 5 B. Mon. 199.

Probably a city tax payer outside of the particular assessment district could mandamus the city officers to proceed to collect the special assessments in order to prevent the expense of the improvement from becoming a general charge against the city to his injury, but, as between such tax payer and the warrant holder, justice would require that the burden should be placed on the latter, for he is a party directly and primarily interested. Such outside tax-payer would have no voice in the proceedings originally, unless perhaps where the contract in terms bound the city generally. He would have no right to remonstrate against the improvement as is usually given to the tax-payers in the district, and would not be heard to contest or resist the contemplated action. In most instances where the liability of the city has been sustained, it has been on the ground that the city officers were the agents of the entire city, and that the city was liable for a failure upon their part to collect the fund. The decisions, however, have not been uniform in this respect, for in some cases it has been held that the city officers in such instances are not the agents of the entire city, but simply the agents of the particular district for the purpose of carrying into effect a special improvement concerning the district.

An investigation of the decisions elsewhere upon the subject of such claims shows them to be in hopeless conflict. They are complicated also by the varying conditions of the respective contracts. In some instances, the city had power to construct the improvement by a general tax. In others, the power was limited to an assessment upon the property benefited. Some of the contracts contained a guaranty that the city would provide the fund. In some cases the rights of the contractors were expressly limited by the contract to the special assessment, there being a provision that they would in no event look to the city for payment; and there

is a conflict in the decisions here also, for in some cases, notwithstanding such a provision, it has been held that the city was liable generally where the fund had not been provided through the fault or negligence of the city officers.

In New York the doctrine of a general municipal liability in such cases is recognized. The latest case from that state to which our attention has been called is *Reilly v. Albany*, 112 N. Y. 30 (19 N. E. 508). In that case the city was held liable on such a contract for an unreasonable delay in collecting the special assessments. There are a number of New York decisions upon this subject, and we shall not undertake to review them all, but will call attention to a few of them where some new features are involved. In *Cumming v. Mayor*, 11 Paige, 596, the same ruling was had. It was said that the —

"local tax is a fund which has been provided by the legislature to reimburse the corporation for the expenses of an improvement which it has either paid or become liable to pay. And if the corporation, voluntarily, or by compulsion, pays such expenses out of its general funds, any citizen who pays taxes may apply to the proper tribunal to compel the corporation to cause the general fund to be reimbursed, by an assessment and collection of the expense of such improvement from the owners of the property benefited, or out of the property itself, as authorized and directed by the charter."

There may have been some conflict in the New York cases, at least they are not clearly reconcilable. In the earlier case of *Lake v. Trustees*, 4 Denio, 520, it seems to have been held that there was no such liability, and it was intimated that there might be an action on the case against the city officers personally for a failure to perform their duties. Also, see, *Tone v. Mayor*, 70 N. Y. 157; *New York & B. S. M. & L. Co. v. Brooklyn*, 71 N. Y. 580, and *McCullough v. Mayor*, 23 Wend, 458—to the same effect

apparently. But the later cases of *Reilly v. Albany, supra*, and *McCormack v. Brooklyn*, 108 N. Y. 49 (14 N. E. 808), held that there was such a liability, and the decisions of that state may fairly be said to support the doctrine.

In Kansas the doctrine has been sustained. In *Atchison v. Byrnes*, 22 Kan. 65, the city was held generally liable, citing *City of Leavenworth v. Mills*, 6 Kan. 288, and *City of Wyandotte v. Zeitz*, 21 Kan. 649. See, also, *City of Atchison v. Leu*, 48 Kan. 138 (29 Pac. 467).

The force of these decisions, however, as authority here is much weakened by the holding that the contractor had no other remedy than to sue the city generally. The right to mandamus the board to enforce making the assessment was not recognized or discussed. The cases took the view also that the city was bound in the first instance and that the provision for assessing the property benefited was intended to reimburse the general fund. In *City of Leavenworth v. Rankin*, 2 Kan. 357, it was held that the mode prescribed to create a general liability must be pursued, and the rule with regard to strict construction of the powers of municipal officers and agents was recognized. It seems that the prescribed mode had been pursued in the other cases.

In Oregon the doctrine has been sustained. In *Portland L. & M. Co. v. East Portland*, 18 Ore. 21 (22 Pac. 536), a general liability was recognized, and the case seemed to proceed on the ground also that the right upon the part of the city to collect the special assessment was lost or inoperative. In the opinion of Lord, J., it is stated that it might be necessary to get additional legislation to that end. In that case the opinion of Strahan, J., holds that the method of charging the city might be different from that required under the charter for contracting a general

obligation, but in that state the decisions have gone to an extreme in sustaining such a liability. In *North Pacific L. & M. Co. v. East Portland,* 14 Ore. 3 (12 Pac. 4), the city was held liable, although it could not have contracted a direct general liability in the first instance. In *Commercial National Bank v. Portland,* 24 Ore. 188 (33 Pac. 532, 41 Am. St. Rep. 854), it was held that a stipulation providing that the contractor should look only to the particular fund would not relieve the city from a general liability in the case of negligence in failing to provide the fund. In *Little v. Portland,* 26 Ore. 235 (37 Pac. 911), it was held by that court that the liability for negligently failing to raise such a fund was one arising *ex delicto* and that the city was liable regardless of its debt limit. Upon that theory the holdings of the court could be sustained. But, in our opinion, the authorities elsewhere do not support the proposition that such an action sounds in tort. At least, that is the general view taken, and we have followed it. Consequently the decisions of that state could not be regarded as bearing strongly here upon the doctrine of a general liability.

In Illinois the doctrine of a general liability has been endorsed, and to the extreme limit, also, in an instance or two. In *Maher v. Chicago,* 38 Ill. 266, it was held that a city could be estopped where it proceeded in disregard of its own ordinances; also that, notwithstanding an express provision in the contract to look only to the special fund, the city would be liable generally in case of an unreasonable delay. In the later case of *Chicago v. People,* 48 Ill. 416, it was held in a mandamus proceeding to compel payment, that the contractor was bound by such a stipulation, it appearing that the city was then in good faith proceeding with the collection of the assessment. And *Maher v. Chicago, supra,* was distinguished on the ground

that there a special assessment could not be levied for want of power, and the court said it would hold differently in the case before it if the city were acting in bad faith such as would be indicated by an unreasonable delay, or if there were defects in the special assessment proceedings which the city could not cure. In *Chicago v. Sexton*, 115 Ill. 230 (2 N. E. 263), the city was held liable for want of fidelity, or for the negligence of those who were authorized to act for it, and it was held that such liability was not within the limitation in regard to the creation of indebtedness. This case involved a building contract. But in *Gaddis v. Richland County*, 92 Ill. 119, which was a railroad bond case, in discussing the acts of public officers, it was held that they must follow the mode prescribed by law in order to create an indebtedness, and the doctrine of strict construction was recognized. These last two cases would seem to be inconsistent in so far as the debt limit, at least, is concerned with the *Sexton case.*

In *Morgan v. Dubuque*, 28 Iowa, 575, it was held that the city was liable for such improvements where there was a failure for an unreasonable time to collect the assessments. There was a stipulation in the contract for payment when the assessments were collected. There was no discussion of the question in the opinion. In *Bucroft v. City of Council Bluffs*, 63 Iowa, 646 (19 N. W. 807), which involved a grading contract, where the contractor had agreed to take for his pay assessment certificates upon owners of abutting property, and there was no power to assess such owners therefor, it was held that the city was liable for the contract price. The city had power to construct such improvements out of its general fund, and it was held that the assumption of power to make the assessment was sufficient to bind the city. See, also, *Scofield v. City of Council Bluffs*, 68 Iowa, 695 (28 N. W. 20); *Polk*

*County Savings Bank v. State*, 69 Iowa, 24 (28 N. W. 416).

The decisions in that state support the general liability doctrine.

The same is also true of the state of Kentucky, according to the following decisions before us. In *City of Louisville v. Hyatt*, 5 B. Mon. 199, which was an action in equity to enforce such assessments against the property owners, and also to recover payment of the city where the contract provided that the contractors would look to the lot owners for payment, it was held, the assessment being void, that the contractors could recover of the city, the city having power to construct such improvements out of its general fund. See, also, *Kearney v. Covington*, 1 Metc. (Ky.) 339. It was said in that case, although not necessary to its decision, that the city would be liable even if it had no power to construct such improvements out of its general fund.

In *Allen v. Janesville*, 35 Wis. 403, where the assessment was void and could not be cured, the city was held liable. It was said that no limitation on the general power to make a binding contract by the city had been disregarded. See, also, *Eilert v. Oshkosh*, 14 Wis. 586.

It may be said that the decisions in New York, Illinois, Iowa, Kentucky and Wisconsin fairly support the doctrine of a general liability here; but some of them are weakened by their decisions in other cases holding to a strict construction with reference to the acts of municipal officers, the same principle being involved.

In California the doctrine of such a liability has been partially recognized, but upon a different ground. In *Argenti v. San Francisco*, 16 Cal. 256, the city had collected a portion of the assessment which had been transferred to its general fund. It was held that the city was primarily liable. In the opinion of Field, J., it was held

that the mode for contracting a general liability had been pursued; that it was necessary to follow the mode, and that the city must proceed by an ordinance where one was required; also, that an estoppel would not arise upon the ground that the whole city had been benefited. FIELD, J., said, in part:

" But I place my concurrence in the judgment heretofore rendered in this case upon the validity of the contracts with the city, which were completed by the acceptance of the proposals of the contractors, and the primary liability of the city for the work performed thereunder. I have been thus explicit, because I do not consider that, independent of such contracts, any liability would attach to the city for the improvement of the streets. A municipal corporation can only act in the cases and in the mode prescribed by its charter, and for street improvements of a *local nature*, express contracts, authorized by ordinance, are necessary to create a liability. The doctrine of liability, as upon implied contracts, has no application to cases of this character."

In *McCracken v. San Francisco*, 16 Cal. 591, it was held that there could be no ratification where there was no original power to make the contract, and that where the power could only be exercised in a particular manner, the ratification must pursue the same mode, the doctrine of strict construction being recognized. See, also, *McCoy v. Briant*, 53 Cal. 247, on the question of limited powers and manner of proceeding, and *Zottman v. San Francisco*, 20 Cal. 97 (81 Am. Dec. 96), for comments on former California cases. These decisions cannot be said to support a general liability here. On the contrary, they support the propositions that the prescribed mode of contracting must be pursued, and that the liability cannot arise by estoppel, and in no event could a liability in excess of the power to contract be created.

The same is true, we think, of Texas, Ohio and Michigan, in so far as we are enlightened by the decisions before us. In *City of Bryan v. Page*, 51 Tex. 532, which was an action to recover for services as an attorney, it was held that where the city had the power to employ by ordinance, its officers could not employ in the absence of one; that the city was not bound on the implied contract, and was not estopped in consequence of having had the benefit of the services.

In *Creighton v. Toledo*, 18 Ohio St. 447, where the contractor was empowered to collect the assessments and where some of the property sold thereunder did not bring enough to meet the amount of the assessments thereon, it was held that where there was an express contract none could be implied, and, the mode of payment having been stipulated, the contractor was bound by it notwithstanding there was a deficiency, and that there could be no implied guaranty upon the part of the city that the amount should be sufficient.

In *Goodrich v. Detroit*, 12 Mich. 279, which involved a paving contract which had been performed by a contractor who was to be paid out of the special fund, and where the special assessments therefor had been collected by the city collector, but which he had not paid over to the city treasurer and was thought to have misappropriated, a suit being pending upon his bond therefor, it was held that, as the contract provided for payment when the assessments were collected by the city collector and paid over to the treasurer, the contractor could not recover of the city on the facts shown, although the city had agreed to collect the assessments with reasonable care and dispatch. It was shown that the suit against the collector was brought in November, 1861, a demurrer was interposed in January, 1862, and no further steps had been taken in the prosecu-

tion of the action when the contractor sued the city in May, 1863. It was held that the charge of negligence was not sustained by the facts shown, but it does not clearly appear what the court would have held if it had thought negligence was established by the agreed case. The city had no power to construct such improvements out of its general fund.

The above cases from the last mentioned four states are not referred to as being directly and strongly against the doctrine of a general liability here in all its phases, but as being against some of the grounds on which a liability is urged in other states, and as tending against it generally, and in harmony with our holdings upon like principles in many instances.

*Saxton v. St. Joseph,* 60 Mo. 153, which is the latest adjudication in that state called to our attention, is against the doctrine squarely, and in effect overruled an earlier case, viz.: *Fisher v. St. Louis,* 44 Mo. 482, taking a different view. It was held also that a charge of negligence was not sustained by a showing of defective proceedings by the council.

In New Jersey the decisions seem to conflict as to the principle involved. In *Reock v. Mayor,* 33 N. J. Law, 129, which was an action by a property owner to recover damages for the alteration of a grade in improving a street, where such damages were to be paid by an assessment upon the property benefited by the improvement, and where the council had neglected to make the assessment, it was held that the plaintiff could not recover. In the later case of *Knapp v. Mayor,* 38 N. J. Law, 371, which was an action upon improvement certificates issued to a contractor for improving a street where the city had neglected to collect the assessments on property benefited, a contrary principle is recognized, and the right to recover was sustained, regard-

less of whether the city could collect the amounts. But in a still later case, viz.: *Paret v. Bayonne*, 40 N. J. Law, 333, the principle adopted in *Reock v. Mayor* was reaffirmed, the court saying:

" The rule attempted to be vindicated in this case is plainly this: That by a certain course of law, a city can be made liable, by a suit, for the expenses incurred in taking land for a public improvement, and the burthen imposed upon the city at large, although the charter prescribes the mode of having such expenses assessed, and provides for their payment by the owners of the particular lands specially benefited. It is obvious that this is an endeavor to subvert the legislative scheme, which is to have the damages ascertained in an appointed manner, and paid by a certain class of persons. This, it has been repeatedly decided in this state, cannot be done."

Here, in fact, a much stronger case was presented in favor of the claimant than the last one referred to, for, instead of a voluntary contractor, the court was dealing with the rights of a man whose land was taken from him by compulsory process for the purposes of the improvement.

But neither of the former cases was referred to, and this is the latest case from that state called to our attention.

In Indiana the non-liability doctrine is strongly sustained by a line of decisions. The latest before us is that of *Quill v. Indianapolis*, 124 Ind. 292 (23 N. E. 788), where it is held that, in making and collecting such assessments, the city authorities do not act as the general agents of the city, but as special agents of the district; also, that issuing bonds or certificates which show upon their face that they are issued in the course of constructing a street improvement and are payable out of a special fund to be derived from assessments upon the property bordering on the street, is very far from creating a debt against the city; that assessments for street improvements are upheld on

the ground that the adjacent property upon which the cost of the improvement is assessed is enhanced in value to an amount equal to the sum assessed against it, and that the owners have received a pecuniary benefit which the citizens do not share in common; that the municipality as such is not benefited by the improvement, and there is hence, under the law in question, neither a legal nor a moral obligation on the city at large to pay for it.  See, also, *Board v. Fullen*, 111 Ind. 410 (12 N. E. 298); *Wren v. Indianapolis*, 96 Ind. 206; *Town of Tipton v. Jones*, 77 Ind. 307; *City of New Albany v. Sweeney*, 13 Ind. 245; *Johnson v. Indianapolis*, 16 Ind. 227; *City of Greencastle v. Allen*, 43 Ind. 347.

In the last mentioned case it was held, where the engineer refused to make an assessment, and the council refused to issue precepts, upon a proper application, against the property holders, that a suit could not be maintained against the town, and that the contractors' remedy was by mandamus, citing many authorities.

We have held in harmony with these and other authorities upon the subject coming from states where the non-liability doctrine is recognized, upon many points.  For instance, in the capitol building case *(Allen v. Grimes, 9 Wash. 424, 37 Pac. 662)*, it was held that, even though the state could be sued, no cause of action could be stated against it by a warrant holder, and that such holder was limited to a right to require the officers to perform their duties, that the obligations to be issued there would create no liability against the state in any manner, but only against the fund, and it never was supposed for a moment that if anything should happen to the land grant, or if any contingency should arise whereby enough money should not be forthcoming to pay the warrants, the state would be liable.  It would be hard to point out a difference between

the equities of that kind of a contract and an ordinary street improvement contract. Both are payable out of a particular fund. In each the respective officers might fail to perform their duties.

The same is true of *Winston v. Spokane, supra,* where we held that the obligations there in question, payable out of the water system fund, did not constitute a city indebtedness. This case was reaffirmed in *Kenyon v. Spokane, ante,* p. 57 (48 Pac. 783). The holding in *Findley v. Hull, supra,* that there could be no recovery against the city, is not in harmony with the decisions of most of the states sustaining the general liability doctrine, but lines up with many of those on the other side of the question. The same is true of the case of *Tacoma Light & Water Co. v. Tacoma,* 13 Wash. 115 (42 Pac. 533), holding to a strict construction of the powers of municipal officers. Others might be cited holding also against the doctrine of estoppel as applied to their acts. Our decisions we believe to have been consistent on that line, except as to some of these street improvement cases. Such representatives were not originally, nor now generally, looked upon as paternal boards or officers with general powers and responsibilities in any way affecting the citizen, but only as authorized to bind their constituents in certain specified ways. The other view is an innovation and dangerous in principle.

The supreme court of the United States has held strongly to the strict construction theory as applied to municipalities and municipal officers. In a late case, that of *Brenham v. German American Bank,* 144 U. S. 173 (12 Sup. Ct. 559), it was held that power conferred upon a municipal corporation to borrow money did not authorize it to issue municipal bonds therefor, and although the bonds which had been issued thereunder were in the hands of

an innocent purchaser for value, it was held that there could be no recovery. Many cases were cited and commented on and some earlier ones overruled.

In *Peake v. New Orleans*, 139 U. S. 342 (11 Sup. Ct. 541), while the case is not exactly in point with the one before us, in that a particular board of city officers, instead of the general council, had been designated by the legislature for the carrying on of the improvement, it was held that there was no general liability upon the part of the city to make good the contract. While some importance was attached to the point mentioned, yet the argument proceeds against the right to recover of the municipality at all in such cases. In some respects the contract there in question was stronger against the city than the ordinary street improvement contract, especially that part with reference to funding the indebtedness in bonds of the city. The court in its opinion quoted from Cooley on Taxation, page 416, stating in substance that general taxes are exacted in return for general benefits, but that special assessments are made upon the ground of special benefits to a limited portion of the community; that they are supposed to suffer no pecuniary loss thereby, their property being enhanced in value to an amount equal to the expenditure, and that "this is the idea that underlies all these levies." That being true, there is no basis for making them a public charge in such instances. Of course, it is generally put upon the ground of the negligence and agency of the city officers, but it is not well grounded. The court said there that, although the board was derelict in its duty, the city could properly say to the warrant holder: "Your remedy was mandamus to compel prompt and efficient action by that board," and quoted approvingly from Judge DILLON as follows:

"Why should all be taxed for the failure of the council to do its duty in a case where the contractor has a plain remedy, by mandamus, to compel the council to make the necessary assessment and proceed in the collection thereof with the requisite diligence?"

And the court says: "On what principle of right and justice can he [the warrant holder] ignore this remedy and charge the municipality and burden all the taxpayers of the city?" It states also that the mere fact of non-collection did not prove dereliction of duty. If there had been dereliction of duty, the court inquired what would be the measure of liability, as there was no guaranty of payment in the contract. The whole trend of this case is strongly against holding municipalities generally liable on such contracts. In concluding its majority opinion the court said:

"It is equally the duty of this court, as of all others, to see to it that no burden is cast upon taxpayers, citizens of a municipality, which does not spring from that which is justly and equitably a debt of the municipality; and, when a contract for local improvements is entered into, the contractor must look to the special assessments, and to them alone, for his compensation, and if they fail, without dereliction or wrong on the part of the city neither justice nor equity will tolerate that it be charged as debtor therefor."

Although the court made use of the expression, "without dereliction or wrong on the part of the city," here in discussing the case, it nowhere appeared what the court would hold in case of such dereliction, nor what the court would deem dereliction on the part of the city. We do not take that expression as an intimation of any particular strength that such liability could be sustained, in the opinion of the court on the ground of neglect of the city officers, for the whole trend of the argument is against it, as well as the authorities quoted.

Nor is the case of *Hitchcock v. Galveston*, 96 U. S. 341, in conflict with the foregoing, for in that case the general bonds of the city were issued, not limited to the assessment fund, and the resort to lot owners upon the assessment was for the reimbursement of the city.

In 1 Dillon on Municipal Corporations (4th ed.), at § 459, it is said:

" So, where the corporation orders local street improvements to be made, for which the abutters are the parties ultimately liable, and which by the charter must be made in a prescribed mode, if made without any contract or a valid one, the doctrine of implied liability does not apply in favor of the contractor, unless, indeed, the corporation has collected the amount from the adjoining owners and has it in its treasury."

And at § 482 it is said:

" It has been several times decided that where the expense of making a local improvement is not to be raised by a general tax, but solely upon the property benefited, *a failure of the corporation,* though it is only the agent of the owners to be assessed, *to discharge its duty,* by making the necessary assessment, or its unreasonable delay in collecting and paying over the money, gives the contractor a right to recover his compensation in an action against the corporation.   The cases on the point are conflicting. *The right to a general judgment should, in our opinion, be limited, in any event, to cases where the corporation can afterwards reimburse itself by an assessment."*

But why should a judgment be allowed at all against the municipality, as the contractor or warrant-holder has a right to proceed against the officers, or the property perhaps, and enforce the assessment?   Why subject the city to the primary liability?   The property in some instances might not bring enough to reimburse the city, if that is to be the controlling idea.

In Elliott on Roads and Streets, at pages 436 and 437, it is said:

" The doctrine that a breach of duty will render the public corporation liable to pay for an improvement which has conferred a special benefit upon a property owner has a very slender support in principle, if, indeed, it has any support at all, unless it is limited to cases where the public corporation secures and misappropriates the money collected on the assessment.  It is not just to compel the citizens generally to pay for a special benefit, and this is done by taking money out of the corporate treasury to pay a local assessment.  Public corporations are instrumentalities of government, and their officers are public officers with defined and limited authority, and the contractor ought to satisfy himself that the assessment can be collected from those who are benefited, and this he can do by looking into the law and examining public records which are open to inspection.  The officers who fail in their duty are not the corporation, for that is composed of the citizens of the locality, and the corporate officers are as much the representatives of the citizens specially benefited as of any of the others.  If these officers fail to do their duty they can be coerced by mandate, and to this remedy the contractor should be confined, for it is far more just and reasonable to impose upon him the duty of watching the proceedings than it is to impose it upon the citizens generally, who, having no special interest in the proceedings, have a right to presume that the officers have done their duty.  It is for those especially interested to secure obedience to law, and not for those who are citizens having no peculiar or special interest in the proceedings. Those only who are lacking in vigilance and diligence should suffer, and not those resting under no duty demanding diligence and occupying no position requiring vigilance.  If the money taken out of the corporate treasury to pay for the improvement came from the derelict officers alone, there would be much justice in holding the public corporation liable for their default; it does not, however, come from them, but from the citizens who constitute the governmental corporation. It is just enough to make the officers do their duty, but it is an unjustifiable burden to impose upon all

the citizens the payment of money for an improvement which specially benefits specific property."

For the reasons hereinbefore stated we have given the case before us extended attention. The question goes much beyond the interests at stake here, and hardships are bound to result however the principles are settled. On the one hand, we have the rights of the general city taxpayer to consider; he may have paid like assessments with reference to his own property, and it is certainly a hardship to call upon him to make good a failure on the part of some other property holder to pay such an assessment, especially where the threatened burden is so excessive, in view of the high rule of property valuations prevailing in assessing for tax levies, and the liberal public debt limits allowed. In some instances it would come near the confiscation of his property. It is not a satisfactory answer to such a man to say that he must be bound by the negligence of men elected to act in a governmental capacity over a town wherein he may be residing, for it leaves him small chance of escape. Under the present civilized conditions he is compelled to live in the society of his fellow men and to subject himself to some form of government, and it is a hard matter to take his property away from him when he has had no direct voice in the proceedings.

On the other hand the warrant holders have parted with value for these obligations, either in performing the work, where the warrants are held by the original parties, or in the amount paid for purchasing them, in the case of subsequent holders. As a matter of justice they are entitled to payment, and we have their interests to consider. Of course, if they should fail in collecting the amounts equitably due them, such failure will not be the first in the his-

tory of government, but it is desirable to make such instances as few as possible.

After all that can be said and done, however, as a matter of right and law, where one of two parties must suffer, the loss should fall upon the one who has had the best opportunity to protect himself and is the most at fault. It is apparent that if, by delay upon the part of the council to provide a special fund, the claim can become a general charge against the city, it would be directly to the interest of the warrant holder to have the proceedings delayed in order that he might obtain the greater security and avoid the possibility of loss through a failure of the property, or any of it, to bring the amount assessed against it, and such instances are not unheard of. It must also be borne in mind that he was a voluntary contractor and was not put in the helpless condition of the general taxpayer outside of the district. While perhaps such general taxpayer might have compelled the city officers to act after the work was done, and the danger of loss to him imminent, the contractor or warrant holder had this same right, and the courts have all the time been open to him. By force of the contract such officers should be held to be more directly his agents or representatives than the agents of the general taxpayers for the purposes of the assessment, if they were such taxpayers' agents at all in the premises. By the contract the contractor has in effect adopted the machinery provided for raising his money through the acts of such officers.

From our investigation of the cases and text books, we are of the opinion that the decided weight of authority is against. allowing a recovery of the city upon such matters at all, in the absence of an express lawful contract to that effect, or in cases where the money has been collected on the assessments and is in the city treasury. However,

it is not necessary to go that far in this case, at least at this time. But we desire to reaffirm the doctrine laid down in *Stephens v. Spokane*, 14 Wash. 298 (44 Pac. 541), that there can be no recovery of the city at all while the assessment plan can be enforced in any way; and the case of *McEwan v. Spokane*, is in that respect overruled.

No case has been presented to us so far involving the right to recover of the city, where the power to enforce the assessments has been lost by lapse of time in consequence of the negligence of the city officers or otherwise, and where it has been a mooted point and discussed and decided, unless it is in the case of *Baker v. Seattle, supra*, which will be further noticed. The case of *Bank of British Columbia v. Port Townsend* has before been sufficiently explained. Expressions bearing on this question may be found in a number of the opinions; for instance, in *Stephens v. Spokane*, 14 Wash. 298, in referring to *Soule v. Seattle*, it was said in effect that the city could not be liable unless it had failed to take any steps for the collection of the special fund upon which the warrants were drawn, or had been guilty of such negligence in what it had attempted to do, that the right to cause such fund to be created had been lost, and similar expressions may likely be found in other cases which, of course, indicate that there might be a liability in such event, but go no further than an intimation. In *Baker v. Seattle*, 2 Wash. 576, however, somewhat the same principle seems to have been involved and decided. Like that in *Paret v. Bayonne*, 40 N. J. Law, 333, referred to, it was much stronger on the facts in favor of the claimants, and yet the holding was against them. It was said there in substance, in discussing the principle, that if the city officers failed to make the collection, it was for the unpaid claimants to compel them to proceed, and that the negligence

of such officers did not place their claims in the category of the city's general indebtedness; that the claimants must look to the source provided by law for their reimbursement; that the duty laid upon the city was not the payment of the awards, but the levy and collection of the assessments. But it was intimated that the city might be liable, where its officers had been fully moved to proceed, and had failed in such instances. In view of this and the subsequent expressions noticed in later decisions, we desire to regard the express point above mentioned as not definitely settled or passed upon here, except in so far as sustaining the complaint in the *Port Townsend* case alluded to may have incidentally held it as the law of that case, but which case, under the circumstances given, should not have force beyond that. As the lower court in this case found that the right to proceed in enforcing the assessments was lost, and as the respondent may have attached no importance to this finding, in briefing and arguing the case, in view of our holding in the *McEwan* case, we feel in duty bound, considering the conflict in the cases alluded to, to allow the respondent to present it in a petition for a re-hearing, if it is involved here. By taking that course the rights of the parties can be fully considered, and doubtless counsel on the respective sides can further enlighten us. The great importance of the question to their clients and the public will certainly be a sufficient incentive. Then, if there is to be such an ultimate liability established, on what ground is it to be placed? Must there have been negligence on the part of the city officers in failing to provide the fund? If so, what is to constitute such negligence? Or must the right to recover be limited to cases where a general liability was expressly contracted in harmony with the charter provisions on that subject? Or is a mere failure for any reason to provide the fund sufficient

to sustain a recovery, and the city thus placed in the position of a guarantor or insurer of the success of the assessment scheme?

One further question requires some notice. It appears that the city council undertook to provide for payment of the assessments in installments extending over a period of years. If these assessments were in substance the property of the warrant holders, it is evident that the council had no right to postpone their payment as against them, and they at all times had the right to compel the city officers to proceed diligently to collect such assessments, notwithstanding the attempt to postpone payment. The city could not thus interfere with their rights in the premises. *In re Heilbron's Estate*, 14 Wash. 536 (45 Pac. 153).

As this case now stands, the judgment will be reversed and the cause remanded with instructions to dismiss it; but no judgment will be entered until the time for filing a petition for a re-hearing has expired, nor, of course, until the petition, if filed, is disposed of.

ANDERS, GORDON and REAVIS, JJ., concur.

DUNBAR, J. *(dissenting)*.—I dissent. While I have not read the most of the cases cited in the majority opinion, I am satisfied they did not involve a contract like the contract upon which this action is based. But " why," say the majority, " should a judgment be allowed at all against the municipality, as the contractor has a right to proceed against the officers and enforce the assessment? Why subject the city to the primary liability?" I answer, for the very best of reasons, viz.: because it *contracted* to assume the primary liability, and the citation from the contract in the opinion shows this conclusively. It expressly covenants that it will prosecute the business of collecting this assessment without delay. It was upon this provision of

the contract that the contractor no doubt relied.  Why should the city not be compelled to respect its contracts? The essence of the whole controversy is this:  A contract has been made, plain and specific in its terms.  That contract has been violated by the appellant, to the injury of the respondent, and I think it a most excellent idea to compel the performance of a contract by a city the same as by a private individual.  The only other question is, did the city have the authority to make such a contract?  I think it did.  The city councilmen are the agents and trustees of the taxjayers of the city and not of the parties with whom they are contracting; and the improvements of streets, while they may be paid by local assessment, are matters which affect the interest of the whole city and every taxpayer in the city, and are matters falling especially within the general jurisdiction of the city council.

The judgment should be affirmed.