## CITY OF OKMULGEE v. YOUNG.

No. 29689.   May 6, 1941.

*113 P. 2d 373.*

W. C. Alley, of Okmulgee, for plaintiff in error.

G. R. Horner, of Okmulgee, for defendant in error.

RILEY, J. This is an appeal from a judgment against the city of Okmulgee for alleged misappropriations of money paid to the city treasurer on account of special assessments levied and collected to pay for street improvements.

August 15, 1922, the city of Okmulgee issued certain street improvement bonds. The issue consisted of 199 bonds of the par value of $500 each, payable on or before August 15, 1932, with interest at 6 per cent per annum, payable annually.

Under the law in force at the time said bonds were issued (sec. 4616, C.O.S. 1921), the city had the right to call in and pay said bonds, or any number thereof, on September 1st of any year during the period for which said bonds were issued, whenever there had accumulated in the city treasury after payment of all annual interest due on said bonds, from proceeds of installments of assessments, an amount sufficient to redeem not less than $5,000 worth of such bonds at par with accrued interest.

In order so to do, the city treasurer was required, on or before August 1st, to publish notice stating that certain of said bonds to the par value of $5,000 with interest, would be paid on September 1st thereafter, designating them plainly and giving the serial number thereof, which were required to be the lowest number of said series outstanding.

One hundred and five of said bonds were paid within the ten-year period, leaving 94 bonds unpaid on August 15, 1932. On that date the city treasurer had in said fund the sum of $3,394.57. Thereafter, and before February 13, 1935, there was paid into said funds money, which together with said sum on hand August 15, 1932, amounted to $8,500. This money was used to pay in full bonds numbered 106 to 122, inclusive.

W. A. Young purchased bonds numbering 123 to 131, inclusive, and commenced this action on March 31, 1938. After the action was brought, he bought two more bonds and amended his petition so as to include them.

His claim is that all money on hand at the date of maturity and all money collected thereafter should have been

applied to all bonds unpaid as of August 15, 1932, pro rata. That the sum so collected, together with that collected after February 13, 1935, would have been sufficient to pay on each of the bonds owned by him the sum of $88.41.

The pleading, stipulations, and evidence show that the sum of $8,500 was collected and paid out to redeem and pay in full 17 of said bonds, after the entire issue was due.

Upon trial, the court held that the $3,394.57 on hand at the date of maturity of said bonds was rightfully paid on the bonds in their numerical order, and that $5,105.47 of the money thereafter collected was wrongfully paid on bonds in their numerical order; that had it been paid out on the bonds pro rata, plaintiff would have received therefrom on his 11 bonds the sum of $638.11, for which sum, together with interest at 6 per cent, or a total sum of $840.27, judgment was rendered.

All the assignments of error are presented under two propositions.

First. That the judgment is contrary to law.

Second. Plaintiff's cause of action, if he has any, is barred by the statute of limitations.

There is no conflict in the evidence. Nearly all of the material facts are stipulated.

It is conceded that the money collected on the special assessment installments was properly applied by the city down to the date when all the bonds matured as provided by section 4616, C. O.S. 1921.

After all the bonds became due, the city continued to call and pay bonds in their numerical order until the decision in the case of Lucas v. First Nat. Bank of Pawnee, 171 Okla. 606, 43 P. 2d 752, holding that serial improvement bonds remaining unpaid after maturity are entitled to share pro rata in funds applicable to their payment where the amount is insufficient to pay all the bonds in full.

Decision in that case was March 26, 1935.

After said decision, all money coming into the fund was paid pro rata. There is no evidence and no contention that the city of Okmulgee got any part of the money which should have been paid to the bondholders pro rata. The question is whether the city is liable for the mistake or error of the city officers.

The general rule is that where money is collected and paid into the city treasury and is applicable to the payment of street or other special improvement bonds, and any part thereof is diverted by the city to its own use and benefit, the city is liable to the bondholders therefor. Brown-Crummer Inv. Co. v. City of Miami, 40 F. 2d 508. But that is not this case.

Plaintiff cites and relies upon City of Bloomington v. Citizens' National Bank, 56 Ind. App. 446, 105 N. E. 575; City of Gladstone v. Throop, 71 Fed. 341.

The latter case is one where the city diverted money which should have been paid on the bonds, and used same to discharge the city's obligation to pay for paving of intersections.

That leaves the City of Bloomington Case, supra, as the only case called to our attention where a city was held liable where such city did not receive and retain the money for its own use. However, Burke v. City of Chicago, 185 Ill. App. 228, in part, indicates a like holding. But there, in addition to wrongfully rebating money to property owners, a part of the money from assessments against private property was used to pay for paving city property.

In Real Estate-Land Title & Trust Co. et al. v. Town of Fairfax, 11 Fed. Supp. 459, affirmed in 84 F. 2d 675, a case arising under the Oklahoma statute, the city was held not liable for the defalcations of the city treasurer.

In that case, the trial court pointed out that this court, in State ex rel.

Southern Surety Co. v. Armstrong, 158 Okla. 290, 13 P. 2d 198, held:

"The duty of such officers is merely to act as the agent or instrumentality for the bondholder in the collection or disbursement of the funds so collected, and in such a case the remedy of the bondholder is against such officers for the purpose of compelling them to act, and the indebtedness cannot be taken away from the property benefited and fixed against the property generally of the city."

There it was held that the remedy of the bondholder is against the officers or town treasurer.

Section 4610, C.O.S. 1921, in force at the time said bonds were issued, provided that such bonds should in no event become the liability of the city issuing the same. Section 4617, C.O.S. 1921, made it the duty of the city clerk to collect the assessments when due, and pay same over to the city treasurer, and provided, further, that:

"The amounts so collected and paid to the city treasurer shall constitute a separate special fund to be used and applied to the payment of such bonds and the interest thereon, as herein provided."

In Moore v. City of Nampa, 18 F. 2d 860, the Circuit Court of Appeals, in construing the statutes of Idaho, with similar provisions for nonliability of the city, said:

"It is to be borne in mind that the officers of the defendant, in making the improvement, were not performing corporate functions of the defendant. They were exercising a special power vested in them with reference to local improvements, in which the city as a whole was not concerned. . . . In all the transactions here involved they were but instrumentalities for originating, carrying out, and paying for the expense of local improvements, the cost of which was assessable against the property benefited thereby. In this fact is an insuperable obstacle to the right of the plaintiff to recover herein, for the officers of the city were not acting on its behalf, and they had no authority to bind it by any act or failure to act in the premises."

There, as here, there was no contention that the money secured was diverted to a corporate purpose.

Moore v. City of Nampa, supra, was affirmed by the Supreme Court of the United States in Moore v. City of Nampa, 276 U. S. 536, 72 L. Ed. 688, 48 S. Ct. 340.

In Real Estate-Land, Title & Trust Co. et al. v. Town of Fairfax, supra, it was said:

"If plaintiffs are to prevail in this action, a special improvement bond will be converted into a general obligation of the town, and property owners who have paid for paving abutting their property, or who are not within the improvement district and whose property is not benefited by such improvements, will be required to pay for the improvements abutting the property of others. This is contrary to the statutes of Oklahoma, and is counter to the plan and theory of special assessments for particular improvements. . . . The defalcation of the town treasurer cannot convert the special improvement bonds into general obligations of the city, and to permit recovery in this case would have such an effect."

Brown-Crummer Inv. Co. v. City of Miami, supra, is a case where money in the separate, special, street improvement fund was converted to the benefit of the city, and is therefore not in point.

If a city is not liable where the city treasurer embezzles money in the special fund, how can it be said that the city is liable when the city officer, in apparent good faith, pays out the money to one or more bondholders, in payment of their bonds in full, where the money should have been paid pro rata to all bondholders?

The holders of the bonds had an adequate remedy. This is pointed out in Lucas v. First National Bank of Pawnee, supra. Plaintiff is in no better position than other bondholders, since he purchased his bonds long after the money sued for had been paid to other bondholders.

Here plaintiff, after a lapse of five years, seeks a judgment which, if allowed to stand, will require the taxpayers generally to pay in part for special improvements of property within the paving district; that which the law said should never be. The officers who fail to do their duty are not the corporation. German-American Sav. Bank of Burlington, Iowa, v. City of Spokane, 17 Wash. 315, 49 P. 542.

Under the law the city is not liable for the mistakes, negligence, or wrongful acts of its officers, where the city derived no benefit from such acts and retains no part of the money for its own use.

We deem it unnecessary to discuss the question of the statute of limitations.

The judgment is reversed and the cause is remanded, with directions to enter judgment for the defendant.

CORN, V. C. J., and OSBORN, BAYLESS, and DAVISON, JJ., concur.