**CITY OF FAIRVIEW, OKLAHOMA, and Dean Ranson, City Treasurer of Fairview, Oklahoma, Appellants,**

v.

**Ash NORRIS, Appellee.**

**No. 5260.**

United States Court of Appeals Tenth Circuit.

May 18, 1956.

---

Edward C. Montgomery, Fairview, Okl., for appellant.

Arnold T. Fleig, Oklahoma City, Okl., submitted brief for appellee.

Before BRATTON, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

In 1939 a class action was filed in the District Court for the Western District of Oklahoma by the City of Fairview, Oklahoma, on relation of a holder of Paving District No. 7 bonds to foreclose delinquent assessments in order to provide a fund for payment of outstanding bonds of the paving district. The suit set out a number of causes of action, and judgments were rendered at various times in 1941 against the specific properties for the respective amounts due.

The City Clerk, J. C. Nicholson, and City Treasurer, J. W. A. Prescott, of Fairview, Oklahoma, were joined as party defendants in the suit, to enforce the duties incumbent upon those officials to register and receive the funds and to pay off the outstanding bonds. Each of the judgments contained a provision requiring the City Treasurer to pay the outstanding bonds in their regular numerical order, as funds became available, and subjecting him to citation for contempt in the event of a failure to perform the required duties. The judgment rendered on February 27, 1941, is set out in the record, and in this regard states:

"and the sums so received by the City Treasurer shall be placed in the special separate fund for the retirement of the bonds and interest coupons issued in said district, and said City Treasurer shall first pay all outstanding and unpaid interest coupons, * * * and shall thereafter, as funds are available therefor, pay all outstanding and unpaid street improvement bonds in said district, or the participation certificates issued in lieu of said bonds, all in their regular numerical order, together with interest thereon at the rate of ten per cent (10%) per annum from maturity to date of payment as provided * * *.

"It is further ordered that in the event the said public officials above mentioned or either of them shall fail to perform the acts and duties hereby required of them, within the time or times hereinabove provided, they, or either of them shall be subject to citation to appear and show cause why they should not be punished for their contempt for their failure to comply with the provisions of this judgment and decree * * *."

The case was submitted upon stipulated facts. These paving bonds are bearer bonds, transferrable by delivery only. The controversy at bar centers around one unpaid bond, Bond No. 10, which

was first presented for payment in October 1954. It is agreed that funds became available for the payment of Bond No. 10 on December 24, 1940. At that time the total principal, coupons, and post-maturity interest due amounted to $633. Notice was given by the City Treasurer to the last known holder of Bond No. 10 to present it for payment, but the bond was not presented for payment. The City Treasurer took no steps to determine the whereabouts of the owner of the bond, and he did not deposit the funds for the payment of Bond No. 10 with the clerk of the court or segregate the funds to await presentment. Instead, at some subsequent time the City Treasurer used the funds to pay the next bond of higher numerical order. And as funds continued to accumulate this payment of higher numerical order bonds continued through Bond 21, apparently the last outstanding bond except for Bond No. 10 and a participation certificate on Bond No. 8 in the amount of $30.26 which likewise was never presented for payment. In 1945, after the payment of Bond No. 21, there was on hand the sum of $372.89. In December, 1952 the City Council of Fairview by resolution directed a transfer of that balance to the Street and Alley Repair Fund of the city.

Thereafter, in October, 1954, Bond No. 10 was presented by Ash Norris, the owner thereof, to the then City Treasurer for payment, and payment was refused. Norris then filed in the District Court for the Western District of Oklahoma this application to require the incumbent City Treasurer of Fairview, Dean Ranson, to comply with the terms and provisions of the judgments rendered in the 1939 action. Relief was asked against the City Treasurer and the City of Fairview for a restoration of the allegedly wrongly converted funds and for payment of the $633 due on Bond No. 10. The trial judge entertained the application and rendered judgment that the $372.89 be reconveyed to the Paving Bond account and that the City Treasurer, Dean Ranson, and the City of Fairview were liable for the full $633 on the bond.

For reasons which shall presently appear, we are of the view that the personal judgment against the present City Treasurer, Dean Ranson, cannot stand and that the judgment against the City of Fairview in excess of $372.89 must likewise be set aside.

The applicable Oklahoma Statutes [1] make the City Treasurer the custodian to receive funds paid in discharge of special improvement assessments and distribute them to the bondholders as required by law. J. W. A. Prescott was the City Treasurer at the time the original judgment was entered in the Federal court. The judgment was directed to him and he was the one originally liable to citation for contempt if he failed to comply with its provisions. In 1945 J. E. Bomgardner was City Treasurer and in 1952, when the City resolution directing the City Treasurer to transfer the balance of $372.89 in the fund to the Street and Alley Repair Fund, Jesse Sutton was the City Treasurer, and it was he who transferred the funds.[2] In October, 1954 when Bond No. 10 was finally presented for payment, appellant Dean Ranson was the City Treasurer and refused payment because the fund had been transferred and no funds were on hand. We then have a situation where these funds were transferred by a predecessor of the present City Treasurer, Dean Ranson, the defendant below.

The City Treasurer in 1952, Jesse Sutton, held these funds as trustee for the bondholders. So long as there were bonds outstanding it was his duty to hold the funds for those to whom they belonged. The City had no lawful authority to require him to transfer them, and he violated his fiduciary responsibility in complying with the demand of the City.

---

1. Okla.Stat.Ann. tit. 11, §§ 105 & 107.

2. The record does not specifically reveal that Sutton transferred the funds. The order was directed to him and the City's statement in its brief that he did transfer the funds stands uncontradicted.

■■ The law is without exception that a trustee is not liable to a beneficiary for a breach of trust committed by a predecessor trustee.[3] Since a violation of the trust relationship was committed by a predecessor city treasurer, Dean Ranson could not be cited for contempt of court. Neither could a personal judgment be rendered against him for acts of misfeasance by a predecessor. It also follows that since the fund was in the possession of the City prior to the time Ranson became City Treasurer he could not respond to the order of the court directing him to retransfer the $372.89 without an order from the City which now has the fund.

■■ While there are some confusing statements in the Oklahoma decisions, a careful perusal thereof makes it clear that the Treasurer and not the City stands in the relationship of a trustee to the bondholders,[4] and the City is not liable for the misfeasance of the bondholder's agent merely because he is also a city employee. The City is liable only where it profits from the trustee's misfeasance and then only to the extent it has received funds or property belonging to the bondholders. In City of Okmulgee v. Young, 189 Okl. 25, 113 P.2d 373, 375, the court said: "Under the law the city is not liable for the mistakes, negligence or wrongful acts of its officers, where the city derived no benefit from such acts and retains no part of the money for its own use."[5] Under the law of Oklahoma it was never the duty of the city to pay these bonds. There were not general obligations of the City and, as stated in State ex rel. Southern Surety Co. v. Armstrong, 13 P.2d 198, 201, "The governing body of said city was not authorized to create by general indebtedness payment of this bond issue." The City of Fairview could not

by resolution directing transfer of the balance of the fund on hand create a general liability against the City for the payment of the full amount of Bond No. 10. The balance of this fund had remained unclaimed for many years by the holder of Bond No. 10. While the City apparently acted in good faith in directing the Treasurer to transfer the balance of the funds, such direction was nonetheless unauthorized and the transfer by the trustee pursuant thereto was an illegal act, and the City is liable to the extent it profited thereby. To that extent it must respond in judgment.

It is finally contended that appellee's action was barred by the five-year statute of limitation.[6] Bond No. 10 had a maturity date upon its face of October 1, 1939 and no presentment for payment was made by the holder until fifteen years later.

Such cases as Miller v. Independent School Dist. No. 16, 171 Okl. 136, 42 P.2d 125, and Nordman v. School Dist. No. 43, 190 Okl. 135, 121 P.2d 290, upon which appellant relies to sustain this contention are in our opinion not decisive. The bonds involved in those cases were school bonds which were general obligations of the districts which issued them, and they contained definite due dates. Under those facts the court held that the five-year statute of limitation barred recovery. The Miller case specifically distinguished the situation where bonds are payable from a particular fund as money comes into that fund from a special source, and stated that a different rule applies in such cases.

It is without dispute that the fund from which these bonds, including Bond No. 10, were payable was a trust fund consisting of monies deposited with the City Treasurer from assessments and

---

3. Restatement, Trusts, § 223; Prager v. Hart, 106 Kan. 14, 186 P. 1015; 90 C.J.S., Trusts, § 259, p. 299; 54 Am.Jur. 240.

4. See City of Okmulgee v. Young, 189 Okl. 25, 113 P.2d 373; State ex rel. Southern Surety Co. v. Armstrong, 158 Okl. 290,

13 P.2d 198; Moroney v. State ex rel. Southern Surety Co., 168 Okl. 69, 31 P. 2d 926; Federal Deposit Insurance Corp. v. Casady, 10 Cir., 106 F.2d 784.

5. Cf. Brown-Crummer Investment Co. v. City of Miami, D.C., 40 F.2d 508.

6. Okl.Stat.Ann. tit. 12, § 95.

from foreclosures on delinquent assessments. While Bond No. 10 contains a maturity date of October 1, 1939, that is not a due date in the sense that the bond can be presented and collected at that date. It can only be paid if there are funds available at that time. The Oklahoma cases make it clear that where there is involved a trust fund created from collection of assessments the five-year statute of limitation does not apply.[7]

In Oklahoma, as in general, the law is that the statute of limitation does not begin to run in favor of a trustee until the breach of trust is brought to the knowledge of the beneficiary.[8]

There is no evidence that the owner of Bond No. 10 knew of the failure to set aside the sum to pay that bond or of a diversion to the Street and Alley Repair Fund, until he presented his bond for payment in October, 1954.

It is our view the court did not err in holding that the statute of limitation was not a bar to this action.

It is our conclusion that the court erred in rendering any judgment against Dean Ranson, the present City Treasurer of the City of Fairview and trustee of the balance of the fund, and that it also erred in rendering a personal money judgment against the City of Fairview, Oklahoma, in excess of $372.89 plus interest from May 5, 1955, and costs.

The judgment against the City Treasurer, Dean Ranson, is reversed and the cause as to him is remanded with directions to proceed in conformity with the views expressed herein. The judgment against the City of Fairview, Oklahoma, is reduced to the sum of $372.89 and interest and costs, as found by the court. The costs of this appeal are assessed in equal parts against the appellant, the City of Fairview, Oklahoma, and the appellee, Ash Norris.

7. See Nordman v. School Dist. No. 43, supra; Town of Shattuck v. Barcafer, 192 Okl. 336, 137 P.2d 238; Hollingsworth v. City of Guthrie, 206 Okl. 634, 245 P.2d 1159.

8. See Exchange Bank of Perry v. Nichols, 196 Okl. 283, 164 P.2d 867; McNeal v. Steinberger, 192 Okl. 283, 135 P.2d 490.