## LUCAS, Treas., v. FIRST NAT. BANK OF PAWNEE.

No. 24402.   March 26, 1935.

Rehearing Denied April 23, 1935.

G. L. Bynum and G. A. Paul, for plaintiff in error.

G. R. Horner and E. J. Gilder, for defendant in error.

RILEY, J.   This action was commenced August 31, 1932, by the First National Bank of Pawnee, against K. V. Lucas, as city treasurer of the city of Henryetta. A writ of mandamus was sought to compel the city treasurer to distribute pro rata certain funds possessed by him and derived from paving assessments levied in a street improvement district within said city. W. V. Lowe, successor in office to K. V. Lucas, by order of this court was substituted as plaintiff in error. A peremptory writ of mandamus was awarded below. It appears therefrom that at the time the action was begun, and thereafter, the bank owned due but unpaid paving bonds of the face value of $6,000, theretofore issued by the city of Henryetta on July 6, 1922, "and that there are other of said paving bonds unpaid in the sum of $12,500, and that all other of said paving bonds issued at said time have been paid;" that the city treasurer had in his custody the sum of $2,603.28, received from the assessment of property improved by the paving for which the bonds were issued. It was the judgment of the trial court that the bank be paid its pro rata share of the funds impounded, which was found to be $844.30, based upon a ratio of 12/37 of the sum impounded (calculated on the bonds in $500 face value denominations). The treasurer paid the bank in compliance with the terms of the writ, and for that reason the bank moved to dismiss the appeal. No stay of the judgment was granted or supersedeas of it allowed. Section 800, C. O. S. 1921;

Ex parte Epley, 10 Okla. 631, 64 P. 18. The payment directed by the writ was coercive. The treasurer would have been subject to a fine as provided by section 457, C. O. S. 1921 (sec. 741, O. S. 1931), and possibly other remedies for failure to obey the writ.

A party against whom a judgment is rendered ought not to be prevented from appealing to this court by the fact that he has paid the judgment, unless such payment was by way of compromise, or with an agreement not to take or pursue an appeal. Warner Bros. Co. v. Freud (Cal.) 63 P. 1017.

Freeman on Judgments says:

"One against whom a judgment is entered, if he fails to satisfy it, must expect to see his property seized and sold at a sacrifice, and it is difficult to conceive how his payment of the judgment can give rise to any estoppel against his seeking to avoid it for error. The better view, we think, is that, though the execution has not issued, the payment of a judgment must be regarded as compulsory, and therefore as not releasing errors, nor depriving the payor of the right to appeal."

The rule is especially applicable to the facts in the cause at bar. State ex rel. Vauer v. Sunset T. & T. Co. (Wash.) 71 P. 198; Hartke v. Abbott (Cal. App.) 289 P. 206.

It must be admitted that the rule above stated, which is of great weight allowing such relief, is more in accordance with justice than that which denied it, but this rule is not applicable to a party who avails himself of a part of a judgment beneficial to him and seeks to prosecute an appeal from dependent parts of the judgment against him. Nor is it applicable to one who may supersede a judgment, as a matter of right, but makes no proof of financial inability to do so. Tinker v. McLaughlin-Farrar Co., 29 Okla. 758, 119 P. 238; Walters v. Fulton, 14 Fed. (2d) 107; Bush et al. v. Aetna Building & Loan Association, 51 Okla. 529, 151 P. 850.

In Quinn et al. v. Security St. Bk., 74 Okla. 102, 168 P. 804, this court held:

"An involuntary payment or satisfaction of judgment or decree cannot be construed as a release of errors assigned on appeal."

In event of reversal the money paid under judgment and by compulsion could be ordered restored. Coker & Bellamy v. Richey (Ore.) 217 P. 638; Carter et al. v. Mitchell et al. (Ala.) 142 So. 514; Simmons v. Simmons (W. Va.) 112 S. E. 189; Asato v. Emirzian (Cal.) 171 P. 90; Moore v. Boise I. & O. Co. et al. (Idaho) 198 P. 753.

The remedy of restitution requires restoration of property which one has lost on account of the compulsion of an erroneous judgment.

The motion to dismiss was properly denied.

The epitomized facts are: On July 6, 1922, the city of Henryetta issued its street improvement bonds in the aggregate sum of $61,000, consisting of 122 bonds of the par value of $500 each, to pay the cost of paving embraced in a particular district. All these bonds have matured and 37 of them are outstanding, of which the plaintiff bank owns 12. All interest coupons have been paid. The bank, without enumerating the serial numbers of its bonds, seeks to share, pro rata, the sum of $2,603.28, collected and impounded by the city treasurer for the purpose of liquidating the whole of the bond issue. The plaintiff in error seeks to retain the sum impounded and to apply it toward liquidating the bond issue in numerical order and in quotas of $5,000 each. Had the bonds in question been issued under the present paving law, chapter 173, S. L. 1923 (sec. 6237, O. S. 1931), this controversy would not exist. Section 26 of that act reads:

"Said bonds shall be issued in series and the bonds of each series shall be numbered consecutively, beginning with number one, and said bonds of each series shall be payable in their numerical order."

But this cause is governed exclusively by the statutes as they existed at the time of issuance of the bonds. Perryman v. City Home Builders, 121 Okla. 150, 248 P. 605; Nelson v. Pitts, Co. Treas., et al., 126 Okla. 191, 259 P. 533; Prince, Co. Treas., v. Ypsilanti Sav. Bk., 140 Okla. 131, 282 P. 282; Moore, Co. Treas., v. Otis et al., 275 Fed. 747.

It is admitted in the reply brief of plaintiff in error, as applied to the law applicable, that "there is no direct wording that the bonds shall be paid in numerical order, * * *"

The nearest approach to such a direction and command is the provision of section 4616, C. O. S. 1921, which reads:

"The city shall have the right to call in and pay said bonds, or any number thereof, on the first day of September of any year during the period for which said bonds are issued, in the following manner: Whenever there shall be in the city treasury, after the payment of all annual interest due on the bonds herein provided for, pro-

ceeds of installments on assessments, together with the interest and penalty hereinbefore mentioned, amounting to a sum sufficient to redeem not less than five thousand dollars worth of said bonds at par, with accrued interest, the whole of said sum shall be applied to the payment of a corresponding portion of said bonds; and the city treasurer shall, on or before the first day of August of any year, after the accumulation of such sum, publish in a newspaper published and of general circulation in said city, and also in some well-known financial journal, a notice stating that certain of said bonds to the par value of five thousand dollars, and accrued interest thereon, designating them plainly and giving the serial number and numbers thereof (which shall be the lowest numbers of said series outstanding), will be paid on the first day of September thereafter; and after said first day of September such bonds as are described in said notice shall cease to bear interest and said notice shall so state."

That provision of law is optional with the city issuing the bonds and is applicable for the purpose of stopping interest payments on the bonds under it, and "during the period for which said bonds are issued" the bonds may be paid in numerical order, but after maturity the numerical provision of said section does not govern. If it did, there would have been no necessity for the subsequent legislation.

Since there is no direct wording of law that the bonds shall be paid in the numerical order, after maturity and delinquency, it follows as a necessary corollary that the amount impounded, which is insufficient to pay all, must be applied pro rata.

The funds derived from assessments constitute a trust pledged for the payment of the bonds. Section 642, R. L. 1910; sec. 4617, C. O. S. 1921; sec. 640, R. L. 1910; section 4615, C. O. S. 1921; sec. 643, R. L. 1910; sec. 4618, C. O. S. 1921. "If there are not sufficient funds to pay the bonds, all the holders should share pro rata." 5 McQuillin, Mun. Corp., sec. 2344; 2 Dillon, Municipal Corporations (5th Ed.) 893; Jewell v. City of Superior (C. C. A.) 135 Fed. 19, Id., 198 U. S. 593, 25 S. Ct. 801, 49 L. Ed. 1173; Myers et al. v. City of Idaho Falls et al. (Idaho) 11 P .(2d) 626. But see, also, Johnson v. McGraw et al. (Wash.) 245 P., 915; State ex rel. Boyd v. Mills, City Treas., (Wash.) 234 P. 1042. It would be a "manifest perversion of equity to require a trustee to commit a breach of trust owing to other cestuis que trustent, by taking from other bondholders and awarding to the appellant so much of this fund as would pay his bonds in full. We know of no principle of equity that would warrant such a decree." Jewell v. City of Superior, supra. Manifestly such a statement of law is applicable in the cause at bar, especially where there is no direct wording of the statute awarding priority of payment after maturity and default, and where the only direction of the statute as to priority of payment during the ten-year term of the bonds is not applicable because of the limitation as to payment in quotas of $5,000, which is far in excess of the amount in controversy.

Judgment affirmed.

McNEILL, C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.