Jimmie Bert WILKS, Appellant,

v.

Billie Frances WILKS, Appellee.

No. 56018.

Supreme Court of Oklahoma.

July 21, 1981.

Bloodworth & Smith by Robert B. Smith, Oklahoma City, for appellant.

Jerry Dick, Oklahoma City, for appellee.

OPALA, Justice.

The issue presented is whether by the provisions of 12 O.S.1971 § 1282[1] an award of counsel fees made in a divorce decree is automatically stayed *ex lege* while an appeal is pending.

We hold that an attorney's fee award in a divorce suit does not fall under the rubric of adjudications which (a) are automatically postponed in effect, under § 1282, until appellate disposition is made or (b) may be superseded by the obligor, under § 968(1), as a matter of right. Execution on counsel fee award made in a divorce case may be issued while appeal is pending unless a stay has been granted, under § 974, either by the trial or appellate court.

This is a husband's appeal from an allowance to the wife of support-alimony and attorney's fees. The awards had not been stayed pending this appeal. Execution issued for the amount of attorney's fee award and a levy was made. The husband secured the trial court's order quashing the execution. The wife then sought ancillary process, out of this court, to arrest the trial court's interference with her attempt to execute upon the award of counsel fees.

The order quashing execution rests on the trial judge's interpretation of § 1282. His view was that the cited section extends, by force of law, an automatic stay of *all* monetary awards rendered in a divorce decree.

The wife contends that an unstayed attorney's fee award may be enforced while an appeal from it is pending. The husband counters that the language of § 1282 sets monetary awards in a divorce decree apart from other money judgments and exempts them from the requirement of either statutory supersedeas (§ 968) or a judicially granted stay of execution (§ 974). He claims a right under § 1282 to have the court treat the judgment as automatically and unconditionally suspended in its effectiveness—without any necessity for an undertaking or other security—until the appeal has been determined.

I.

LEGISLATIVE HISTORY OF §§
1280 and 1282

Our quest for resolution of this controversy must begin with a search for the meaning of § 1282 from its antecedents. The cited statute provides:

"Every decree of divorce shall recite the day and date when the judgment was rendered. If an appeal be taken from a judgment granting or denying a divorce, that part of the judgment does *not become final and take effect* until the ap-

---

1. All statutory references in the text are to Title 12.

peal is determined. If an appeal be taken from any part of a judgment in a divorce action except the granting of the divorce, the divorce shall be final and take effect from the date the decree of divorce is rendered, provided neither party thereto may marry another person until six (6) months after the date the decree of divorce is rendered; that part of the judgment appealed shall *not become final and take effect* until the appeal be determined." [emphasis supplied].

The two pertinent phrases in the section are underscored [italicized]. The first of them will be referred to as Clause I and the second as Clause II.

Under the pre-1969 version of our statutes [2], an appeal from marriage-status adjudication (the granting of divorce) had to be brought within a shorter time limit than other civil cases. The purpose of the 1969 amendments, here under construction, was to put an end to the dichotomous division of divorce appeals into two classes—the "status" and "other-issue" categories—and to make both appealable as other civil cases. The 1969 versions of §§ 1280 and 1282 exhibit a double purpose: (a) to continue the pre-1969 legal regime of automatically preserving the *pre-suit* marital status while an appeal from granting of a divorce remained undetermined and (b) to prevent the *decree-conferred* rights of the parties—those which are incidental to marriage-status adjudication—from becoming final before a disposition could be effected of an appeal in which they were tendered for review.

The amendments were no doubt designed to make appellate procedure uniform for *all* issues sought to be reviewed in divorce cases and to make that procedure, so far as possible, identical to other civil cases. The terms of § 1282 contain two clauses which deal with the "postponed" effect and finality of divorce decrees that are on appeal. The first of these clauses (Clause I) applies to appeals from status adjudication. It provides that the dissolved marriage's legal existence shall continue until appeal is de-

cided and it prohibits remarriage. The second clause (Clause II) deals with appeals from "other-issue" determinations. The language in Clause II appears, at first blush, also to postpone the enforceability of monetary awards—a result which, if correct, would single out matrimonial litigation for treatment vastly different from that which applies to other civil cases. Were we to assume from the language of Clause II that an automatic stay, without an undertaking, was in fact intended, enforcement of decree-imposed monetary awards could be suspended by the mere filing of a petition-in-error. The absurdity of that result is at once apparent. For this and other reasons to be stated later in this opinion we must reject the husband's claim to an automatic stay *ex lege*.

## II.

### THE MEANING OF THE SECOND PHRASE IN § 1282 WHICH PROVIDES THAT ADJUDICATIONS "SHALL NOT BECOME FINAL AND TAKE EFFECT"

A divorce decree's enforceability pending appeal is governed by § 1282. A judicial decision in this rubric is still subject to a legislatively-imposed dichotomous division of *status* and *other-issue* determinations. For both parts of this split category the cited section provides—in identical language repeated twice in its text (See Clauses I and II)—that these adjudications do "not become *final* and take *effect*" until appellate disposition is made. The quoted phrase is central to the controversy before us. Under consideration here is its meaning in application to those parts of a divorce decree by which "*other issues*" are resolved —i. e., those which are incidental to the dissolution of a matrimonial bond (*status*).

██ *Finality* and *effect* are not parallel concepts. While the appeal is undecided, a judgment obviously lacks the attributes of *finality*, although it may be clothed with *effect* if it can be enforced while uncertain-

**2.** 12 O.S. 1961 §§ 1280 and 1282. These statutes were amended in 1969 by two companion bills. Okl.Sess.Laws 1969, Chs. 321 and 322, pgs. 455 and 456.

ty continues to exist about the ultimate outcome of litigation. Our statutory regime firmly rejects the common-law rule which grants—*ex lege*—an automatic stay for as long as proceedings-in-error are pending.[3] As a general rule in Oklahoma, although *finality* always is, the effectiveness of a judgment need not be, and most often is not, postponed by an appeal. Absent a clearly-expressed legislative command to the contrary, civil judgments are subject to *immediate* rather than *postponed*, enforcement while there is a pending appeal. In short, a non-final judgment can be, and most often is, at once effective.[4]

To this general policy of our law a judicial decision granting or denying a divorce constitutes a well-recognized exception. That part of the decree—§ 1282 declares—does "not become final and take effect" while an appeal is pending. In this context it is clear that the quoted phrase is intended to do no more than extend the *pre-suit* status of matrimony to the point of appellate disposition. Sec. 1282 also protects the continued existence of marital *status quo* by prohibiting remarriage before litigation has reached the point of *finality*. The reason for the exception is self-explanatory. The *pre-suit* status must be preserved by an automatic stay lest it be irretrievably lost. The remedy of appeal would be but an empty gesture if divorce were allowed to take effect immediately or if its denial were permitted to be ignored while the case was in process of being reviewed.

▮ Although two identically-worded clauses in § 1282 appear to postpone the enforceability of *all* divorce-related decisions, the context surrounding them does not indicate that they were ever intended to have an identical meaning. While Clauses I and II are the same in verbiage, we cannot give them the same construction. They operate upon distinctly different adjudications. What is intended for suspension by

Clause I is only the *pre-suit* status, while the rights affected by Clause II are *decree-conferred*. The dichotomy of "status" and "other issues" would not have been necessary had the legislature targeted both of these adjudications for identical treatment. The only effective way to protect the dissolved marriage status is by prohibiting remarriage. There is no way for a pre-suit marital status to be suspended by the conventional medium of an undertaking. While a definite mechanism was needed and provided in Clause I—*via* the prohibition of remarriage—for effectuating an automatic stay in status appeals, Clause II is entirely silent about the method for keeping in suspension decisions which are affected by a review of "other issues". The legislature simply did not say in Clause II how the effectiveness of the decree-conferred rights is to be postponed, nor did it give us a clear indication of its intention to exempt divorce-related monetary awards from the general rubric applicable to recovery of money. Absent a clearly expressed legislative command, we cannot single out divorce-related monetary awards for a less favorable treatment during the pendency of appeal from that accorded other adjudications granting recovery of money. A contrary holding would leave obligees under divorce decrees with unsecured and unconditionally suspended claims to the adjudicated liability. The language of the 1969 amendment does not, either explicitly or implicitly, sanction the result contended for by the husband. Were we to accede to his view, other-issue adjudications in domestic divorce decrees would have less effectiveness pending appeal than foreign adjudications of the same class.[5]

▮ When the legislative objective appears clear from an examination of the enactment, words may be altered, modified or supplied in order to afford them the force and effect that was doubtless intend-

---

3. *In re Epley*, 10 Okl. 631, 64 P. 18, 20 [1901]; *Howe v. Farmers' & Merchants' Bank*, 155 Okl. 284, 8 P.2d 665, 667 [1932].

4. See 12 O.S.1971 §§ 968 and 974.

5. See 12 O.S.1971 §§ 715 and 723, under both of which foreign judgments, unless stayed, may be enforced in Oklahoma while an appeal is pending in the forum state.

ed.[6]  We therefore hold that the intent of the 1969 amendment of § 1282, now in force, was not to impose an automatic stay but to declare that decree-conferred rights—in settlement of the proprietary incidents of a dissolved marriage—*do not become final until the appeal is determined.* Next to be considered is the issue whether a decree-conferred award of attorney's fee may be superseded under § 968(1) by an act of the obligor posting the required statutory bond.

### III.

### THE STATUS OF DECREE–CONFERRED COUNSEL FEE ALLOWANCES DURING THE PENDENCY OF APPEAL IN A DIVORCE CASE

A decree of divorce ordinarily contains a veritable cluster of adjudicated claims for money payment which possess different characteristics for enforcement classification.  Many of these are in the nature of a maintenance-related, status-based liability which, as a matter of sound public policy, may not be included within the purview of supersedeas under § 968(1)[7] and thus become suspended by the simple act of the debtor posting a bond to postpone the point at which the adjudicated support duty must be discharged.[8]  Among awards which stand exempted from the provisions of § 968(1) are support-alimony, child support and counsel fee allowances.

■ Both the trial and appellate courts may make provisions for payment of support, alimony and counsel fees during an interspousal appellate contest.[9]  A court-decreed allowance for services of an attorney in a matrimonial suit is deemed to be an "accessory" to, and in the very same category as, other maintenance-related obligations.[10]

■ We find no basis, either in statutory policy or case law, for treating counsel fee allowance in a matrimonial suit as subject to statutory supersedeas under § 968(1). Rather, we hold that decree-conferred counsel fee awards may be dealt with, for stay purposes, in the very same manner as are alimony, child support or custody orders.[11] All of these decisions are subject to an exercise of the court's discretionary powers under § 974.[12]  *The status-based support*

---

**6.**  *Wray v. Oklahoma Alcoholic Beverage Control Bd.*, Okl., 442 P.2d 309, 311 [1968]; *Midwest City v. Harris*, Okl., 561 P.2d 1357, 1358 [1977].

**7.**  The terms of 968(1) provide in pertinent part: "*No proceeding to reverse,* vacate or modify any judgment or final order rendered in the district court ... *shall operate to stay execution,* unless the clerk of the court in which such judgment or final order shall have been rendered, shall take a written undertaking ...:
First. When the *judgment or final order sought to be reversed directs the payment of money,* the written undertaking shall be in double the amount of the judgment or order....* * *" [emphasis supplied]
*Potter v. Wilson*, Okl., 609 P.2d 1278, 1281 [1980]; see Marks-Barnett, Renovations and Innovations: Commentary on Recent Developments in Family Law, 50 OBJ 1276–1278, 2758–2761.

**8.**  *Dowdell v. Dowdell*, Okl., 463 P.2d 948, 953 [1970]; *Scott v. Scott*, 203 Okl. 60, 218 P.2d 373, 376 [1950].

**9.**  *Jones v. Jones*, Okl., 612 P.2d 266, 268 [1980]; *Tisdale v. Wheeler Bros. Grain Co.*, Okl., 599 P.2d 1104, 1107 [1979].

**10.**  *Potter v. Wilson*, supra note 7; *Turman v. Turman*, Okl., 438 P.2d 488, 490 [1968].

**11.**  *Cochran v. Rambo*, Okl., 484 P.2d 500, 501 [1971]; *Blair v. District Court, Oklahoma County*, Okl., 594 P.2d 367, 369 [1979]; *Enyart v. Comfort*, Okl., 591 P.2d 709, 710 [1979].

**12.**  The terms of 12 O.S.1971 § 974 provide in pertinent part: "Execution of the judgment or final order of any judicial tribunal, other than those enumerated in this article, *may be stayed on such terms as may be prescribed by the court* or judge thereof, in which the proceedings in error are pending ...." [emphasis supplied]
"Supersedeas" is, in our usage, different from "stay". The former denotes a suspension of a judgment's effectiveness pursuant to an undertaking as a matter of statutory right [§ 968]. The latter means suspension of the effectiveness of a discretionary act of a trial or appellate court [§ 974].  *In re Epley,* supra note 3; *State v. Fidelity & Deposit Co. of Maryland,* 179 Okl. 437, 66 P.2d 85, 87 [1937]; *1942 Chevrolet Automobile Motor No. BA–19339 v. State,* 191 Okl. 26, 128 P.2d 448, 449 [1941]; *Howe v. Farmers' & Merchants' Bank,* supra note 3.

*duty they impose may not be defeated, pendente lite, by the will of the obligor posting a supersedeas bond.*

The trial court is accordingly instructed to afford the husband an opportunity to apply for a § 974 stay of the counsel fee award pending appeal. If (a) the husband fails to seek a stay order or (b) his stay request is denied and no re-examination is sought in this court or (c) the stay is granted but the husband fails to post the required undertaking or otherwise fails to meet the terms and conditions of the court's stay order, the wife shall be allowed to proceed—unimpeded by judicial action—with the enforcement of her recovery by such means as the law will authorize.

IRWIN, C. J., BARNES, V. C. J., and WILLIAMS, HODGES, LAVENDER, DOOLIN and HARGRAVE, JJ., concur.

SIMMS, J., concurs in result.