**GRAND RIVER DAM AUTHORITY, a public corporation, Appellee,**

v.

**Don E. EATON and Nadja L. Eaton, et al., Appellants.**

**No. 75022.**

Supreme Court of Oklahoma.

Dec. 26, 1990.

706

Dugie Hagberg Standeford, Asst. Gen. Counsel, Grand River Dam Authority, Vinita, for appellee.

Joe L. White, Collinsville, for appellants.

LAVENDER, Justice.

The question we decide here is whether an appeal should be deemed moot and subject to dismissal when during the pendency of the appeal to reverse a money judgment the judgment debtor, rather than either obtaining a stay of the judgment or filing a supersedeas bond as allowed by 12 O.S. 1981, § 968, pays the final judgment be-

cause the debtor is deemed to have acquiesced in the judgment by paying it. The trial court, acting as our Special Master, being presented with no valid basis for Appellants', Don E. and Nadja L. Eaton's, failure to obtain a supersedeas bond (e.g. financial inability) ruled payment of the judgment was voluntary even though the outstanding judgment could expose Appellants' real and personal property to execution and possibly ultimate sheriff's sale. It ruled payment was not coerced or involuntary because Appellants did not show unavailability of another immediate avenue of staying execution on the judgment while the appeal was pending, i.e. posting supersedeas bond. We hold normally only when payment of a final judgment is made under circumstances showing it is made to settle or compromise the matter and, thus, to abandon the right to appeal or when payment somehow makes it impossible for effective relief to be granted upon reversal of judgment should the appeal be deemed moot and subject to dismissal. We believe this view is in keeping with enlightened jurisprudence, it will promote the payment of final judgments and it has the support of other jurisdictions. *See Franzen v. Dubinok*, 290 Md. 65, 427 A.2d 1002 (Md.1981); *See also Martin Development Co. v. Keeney Constr. Co.*, 216 Mont. 212, 703 P.2d 143 (1988); "Defeated party's payment or satisfaction of, or other compliance with, civil judgment as barring his right to appeal", 39 A.L.R.2d 153 (1955).

From our review of the record the payment *was not* made to compromise or settle the matter and there is no basis for concluding effective relief cannot be granted if the judgment is reversed. Upon reversal the money could simply be ordered returned to Appellants. We, thus, deny a motion to dismiss the instant appeal filed by Appellee, Grand River Dam Authority.

In 1983 Appellee obtained a money judgment against Appellants.[1] The judgment apparently consisted of an overpayment of

---

1. Nothing in this opinion should be construed to express any view of this Court as to the merits of the issues raised as error by Appellants in their Petition in Error. The factual matters set

out in the opinion are merely set forth so that an appropriate disposition may be made of the Appellee's motion to dismiss the appeal.

a commissioners' award in a land condemnation case which had been paid into court and withdrawn by Appellants. A writ of execution issued in 1985, but was returned "no property found". Apparently nothing much happened in the matter until 1989 when Appellants were served with an order to appear and answer as to assets. At such time Appellants filed motions with the trial court arguing the initial execution in 1985 was ineffective to keep the judgment alive because Appellee had interfered with the execution by instructing the sheriff to put on the 1985 writ of execution "no property found" even though no effort had been made to determine whether property existed to satisfy the judgment. The trial court denied the motions and found the judgment vital. Motions to vacate and reconsider were filed which were denied on February 1, 1990. On February 2, 1990, a new writ of execution was issued. The record we have been provided shows on February 16, 1990, Appellants filed a tender of judgment pursuant to 12 O.S. Supp.1983, § 706.2 in the sum of $47,008.80 with the court clerk apparently in an attempt to secure release of the money judgment as a lien on a farm owned by them in Rogers County. Notice of appeal was given therein and a petition in error was filed in this Court on February 20, 1990.

The testimony at the hearing before the Special Master appears to show Mr. Eaton began receiving phone calls from a deputy sheriff informing him about the new execution some time in February 1990 and that if the matter was not taken care of his property would have to be sold, including the farm. The record also shows on February 26, 1990, Appellee filed a request for additional cash deposit pursuant to 12 O.S. Supp.1983, § 706.3, arguing the money already tendered was insufficient to cover costs and interest on appeal. The request asked for another $15,160.00 to be deposited. On or about March 9, 1990, Appellants responded to the request by filing a document indicating their tender under § 706.2 could be construed as receipt by the court clerk as satisfaction of judgment and costs under 12 O.S.1981, § 27. On April 18, 1990, an order of disbursement of the

funds to Appellee was entered and approved of as to form by counsel for Appellee and Appellants. The money was disbursed and Appellee filed a release and satisfaction of judgment.

The testimony at the hearing before the Special Master, further showed that although an appointment was made by Appellants' attorney for Mr. Eaton to see a surety to obtain a supersedeas bond the appointment was never kept. The testimony seemed to show it was not kept because Mr. Eaton was confused by the whole situation and became scared about the apparent threat to his farm because of the call(s) from the deputy sheriff. It appeared he became fixated by the thought of losing his farm because of the debt. No conclusion can be drawn from the record that Appellants were financially unable to procure a supersedeas bond, *nor any firm conclusion that they ever intended to abandon their appeal.* What appears from the record was that Mr. Eaton was concerned about losing the farm.

The record in this case, the arguments of the parties and the ruling of the trial court have unearthed apparent confusion in our law as to when exactly the payment of a judgment by a judgment debtor will subject the appeal to dismissal as moot because such payment is deemed to be an abandonment of the appeal. We take this occasion to clear up any confusion and to set forth a rule which in most circumstances will end in the appeal being dismissed only when payment is intended to compromise or settle the matter and to relinquish the right to appeal.

Under our present law it appears the record here would be sufficient to dismiss the appeal because there was no showing of an inability to procure a supersedeas bond. *See Lucas v. First National Bank of Pawnee,* 171 Okla. 606, 43 P.2d 752, 753 (Okla.1935) (dicta to effect that one who pays judgment without some showing of financial inability to procure supersedeas bond waives right to appeal); *Bush v. Aetna Building & Loan Ass'n,* 51 Okla. 529, 151 P. 850 (Okla.1915) (motion to dismiss appeal as moot denied where appellants

paid judgment to prevent sale of property under execution, *but submitted uncontroverted affidavit showing financial inability to post supersedeas bond*); *Pixley Lumber Company v. Woodson*, 556 P.2d 596 (Okla.1976) (acquiescence in judgment implied where partial payment made and no supersedeas procured); *Wallace v. Boston Mutual Life Insurance Company*, 197 Okla. 468, 172 P.2d 629 (Okla.1946) (payment of judgment impliedly shows acquiescence in judgment on part of debtor).

Either the holdings of the above cases or certain language therein can be contrasted with cases such as *Guin v. Security State Bank*, 74 Okla. 102, 168 P. 804 (Okla.1917), where this Court held "[a] payment of a judgment to prevent sale under execution or order of sale is not a voluntary satisfaction of the judgment [and] ... cannot be construed as a release of errors assigned on appeal." *Id.* 168 P. at 805. It is noted in *Guin* that no supersedeas bond was procured and no discussion is had in the opinion as to inability of the judgment debtor to post same.

There are also cases such as *Bateman v. Riner*, 170 Okla. 13, 38 P.2d 581 (Okla. 1934), *Duncan v. Ratcliff*, 63 Okla. 19, 161 P. 1174 (Okla.1916) and *Tinker v. McLaughlin–Farrar Co.*, 29 Okla. 758, 119 P. 238 (Okla.1911), which stand for the generally recognized rule that where pending appeal there is a satisfaction of the judgment the appeal will be dismissed as moot because only abstract or hypothetical questions are presented. These latter opinions are extremely brief and it appears that in all of them no response or objection was made to the motion to dismiss the appeal. In fact, *Tinker, supra* relied on *Reece v. Chaney*, 28 Okla. 501, 114 P. 608 (Okla. 1911), a case where the appeal was dismissed because the record showed affirmatively *it was settled pending appeal.* In our view, these latter four cases appear to be uncontested situations where the judgment and, thus, appeal along with it, was deemed settled by the parties.

There is also the case of *Tara Oil Co. v. Kennedy & Mitchell, Inc.*, 622 P.2d 1076 (Okla.1981), a case which really has little resemblance factually to the situation here, but contains *patently* incorrect dicta purportedly based on *Bush v. Aetna Building & Loan Ass'n, supra,* to the effect that *Bush* held "it was not an involuntary payment (under duress) for the judgment debtor to pay a judgment he had appealed simply because he was not financially able to make supersedeas." *Tara, supra,* at 1077. *Bush* did not so hold. *Bush* was a case where the appeal was not dismissed when the appellants there filed an uncontroverted affidavit showing financial inability to post a supersedeas bond and paid a judgment in order to prevent loss of certain property by sale under execution. The real rule in *Tara* is that a party cannot at the same time accept the benefits of a judgment and attack it on appeal, a situation not involved here. There the appealing party accepted a cash bonus under an Oklahoma Corporation Commission order while at the same time attacking on appeal the validity of an earlier pooling order on notice grounds. Here, Appellants have accepted no benefit from the judgment, they have merely paid it after an execution had issued and after receiving telephone calls from a deputy sheriff which led them to believe their farm would be sold if the execution remained outstanding.

Other jurisdictions have delineated various contradictory tests to make a determination of whether an appeal should be dismissed when a judgment debtor has paid a monetary judgment. "Defeated party's payment or satisfaction of, or other compliance with, civil judgment as barring his right to appeal", 39 A.L.R.2d 153, *supra.* Some find the judgment alone sufficient legal compulsion so that payment thereafter in the normal circumstance will not be deemed a ground for dismissal of the appeal. *See Franzen v. Dubinok, supra,* 427 A.2d at 1005. Others seem to place added reliance on the fact execution has issued and a judgment debtor by paying the judgment is attempting to protect his property from seizure and sale. See "Defeated party's payment, etc.", 39 A.L.R.2d at 166–167. Oklahoma appears to be aligned with cases in this latter category on the basis of *Guin, supra,* 168 P. at 805.

However, as noted above our cases also seem to stand for the rule that in the absence of a showing of some valid reason why a supersedeas bond is not procured to stay the effectiveness of a judgment and, thus, its collection, payment by the judgment debtor will be deemed acquiesence in the judgment sufficient to compel dismissal of the appeal. *See Pixley Lumber Company, supra,* 556 P.2d at 597–598; *Lucas, supra,* 43 P.2d at 753 (dicta); *Bush, supra,* 151 P. at 851 (factual underpinnings).

■ We now reject any rule that we have previously espoused that would require dismissal of an appeal merely on the basis that a judgment debtor pays a final and appealable judgment that could subject his property to execution and ultimate sale. Our rejection applies whether or not execution has issued. We also reject the view that payment coupled with a failure to show inability to post a supersedeas bond somehow subjects an appeal to dismissal on mootness grounds. In our view failing to post a supersedeas bond is immaterial to the question in the normal circumstance for the reason our case law makes clear the posting of a supersedeas bond is neither a prerequisite nor a jurisdictional requirement to an appeal. *Adams v. Unterkircher,* 714 P.2d 193, 196 (Okla.1985).

Our views on the instant situation were well expressed by the New York Court of Appeals over 100 years ago:

> The defendant's practice of paying the judgment before appealing from it is not to be condemned. It is rather to be encouraged. A party who recovers at the trial term ... might fairly be deemed entitled to the fruits of his action without

further delay. The law, however, allows [an] appeal; but, although it is taken, the successful party may nevertheless enforce his judgment by execution, and so collect its award, unless the defeated party secures its ultimate payment by a deposit of money or an undertaking. Why may he not simplify the matter by placing the funds at once in the hands of the party who, if the appeal fails, will be ultimately entitled to them? By doing so he will save the cost of execution, and do no harm to his creditor. We think he should not, by a temporary submission to the decision of the court, be placed in a worse position than if he had awaited execution and settled it with sheriff's fees.

> \* \* \* \* \* \*

> [I]t must be deemed too well settled by authority to require further discussion that a party against whom a judgment has been rendered is not prevented from appealing to this court by the fact he has paid the judgment, unless such payment was by way of compromise, or with an agreement not to take or pursue an appeal. *Hayes v. Nourse,* 107 N.Y. 577, 14 N.E. 508, 508 (1887) (citations omitted).

■ We therefore hold that unless the payment of a final judgment by a judgment debtor is shown to be made with the intent to compromise or settle the matter and, thus, to abandon the right to appeal or the payment in some way, not involved here, makes relief impossible in case of reversal, the payment will not be deemed to either waive the right to appeal or moot the controversy.[2] To the extent language in the

---

**2.** The case of *Adams v. Unterkircher,* 714 P.2d 193, 196 (Okla.1985), in addition to its recognition that posting a supersedeas bond is neither a prerequisite nor jurisdictional requirement to an appeal, also stands for the proposition, as earlier expressed in *Bras v. Gibson,* 529 P.2d 982 (Okla.1974) and the correct holding contained in *Tara Oil Co. v. Kennedy & Mitchell, Inc.,* 622 P.2d 1076 (Okla.1981) (see text for discussion of incorrect dicta), that acceptance of the benefits of a judgment does indeed waive the right to appeal and seek reversal. When the appealing party accepts the benefits of a judgment and at the same time seeks to reverse detrimental parts of it the inconsistency of such conduct is gener-

ally apparent. Normally, in such a situation the appeal should be dismissed because such acts are fatally inconsistent with proper appellate procedure. *See Adams, supra* at 196. The situation involved here does not involve the acceptance of any benefits from a judgment by the appealing party, but merely payment of the judgment to shield against the potential adverse consequences that come from a monetary judgment, e.g. execution and possible sale of the debtor's property. The rule we fashion here, thus, does not alter our position with respect to an appealing party that has accepted the beneficial parts of a judgment and at the same time seeks to reverse detrimental portions thereof.

cases of *Pixley Lumber Company, Wallace, Lucas, Bush* and *Tara Oil Co., supra,* are inconsistent with our holding here such language is expressly disapproved. Accordingly, Appellee's motion to dismiss the instant appeal is DENIED consistent with the views expressed herein.[3]

HARGRAVE, C.J., and HODGES, DOOLIN and SUMMERS, JJ., concur.

OPALA, V.C.J., and SIMMS and KAUGER, JJ., concur in part; dissent in part.

ALMA WILSON, J., dissents.

OPALA, Vice Chief Justice, with whom KAUGER, Justice, joins, concurring in denying the motion to dismiss and dissenting from the court's opinion.

Today the court denies the appellee's motion to dismiss and holds that a judgment debtor's *voluntary* satisfaction of the adjudicated obligation no longer operates to bar an appeal *unless* the payment was "made with the intent to compromise or settle the matter." Although I also would deny the

appellee's quest for this appeal's dismissal, I cannot accede to the court's pronouncement. *There is here no need for changing the court's jurisprudence.* As the record clearly reveals, the appellants, whose payment was made *involuntarily, have not acquiesced in the judgment. The issues sought to be reviewed have not hence been rendered moot.*

I.

**THIS APPEAL IS NOT DISMISSIBLE AND THERE IS ABSOLUTELY NO JURISPRUDENTIAL NEED FOR TODAY'S RULE CHANGE**

The legislature has provided *but* two specific methods by which a judgment's effectiveness may be suspended pending appeal to afford a judgment debtor protection from mid-appeal execution and from the operation of judgment lien law—one is by supersedeas bond[1] and the other by cash deposit.[2] The law *plainly* demands that an appealed judgment—to be shielded from interim enforcement and from lien attachment—*must be secured, not voluntarily paid.*[3] Clearly, under the existing *statu-*

---

3. On July 24, 1990 Appellants filed a motion to strike and correct record which appears to be a request to this Court to not consider two documents which were attached to Appellee's July 13, 1990 brief in response to Appellants' brief in support of Appellants' exception to order certifying judgment as voluntarily satisfied. We deem said motion moot for the reason consideration of the two exhibits does not alter our ruling that the instant appeal is not subject to dismissal.

1. See 12 O.S.1981 § 968, whose pertinent terms are:

"No proceeding to reverse, vacate or modify any judgment or final order rendered in the district court . . . shall operate to stay execution, *unless the clerk of the court in which such judgment or final order shall have been rendered, shall take a written undertaking,* to be executed on the part of the plaintiff in error, to the adverse party, with one or more sufficient sureties. . . ." (Emphasis added.)

Although this section has been *repealed effective January 1, 1991* (see Okl.Sess.L., Ch. 251, § 20), the legislature has substituted a new enactment (to become effective on the same date) which, in keeping with the past, authorizes an appellant to secure the judgment pending appeal by either a supersedeas bond *or* a "cash deposit." See 12 O.S.Supp.1990 § 1007(C), whose pertinent terms provide:

"C. * * * [A]n appellant may obtain a stay of enforcement of a judgment during the pendency of an appeal by filing a written undertaking *secured by a supersedeas bond or [by] cash deposit[ed] with the court clerk.* * * *" (Emphasis added.)

2. See 12 O.S.Supp.1983 § 706.2, whose pertinent terms are:

"*In the event of an appeal to the Supreme Court of Oklahoma from a money judgment, the lien* of such judgment . . . *shall cease when the judgment debtor or debtors deposit* with the clerk of the court in which the judgment was rendered *cash sufficient to cover the whole amount of the judgment* . . . . Upon final determination of the action, the court clerk shall apply the deposit to any judgment that might be rendered against the depositor or depositors, and refund any balance in excess of the judgment to the depositor . . . or, in the event the action is finally determined in favor of the depositor . . . to refund the whole amount for the cash deposit to the depositor or depositors." (Emphasis added.)

3. Our statutory regime rejects the common law's norm by which an automatic stay is granted *ex lege* for so long as proceedings in error remain pending. *In re Epley,* 10 Okl. 631, 64 P.18, 20 (1901); *Wilks v. Wilks,* Okl., 632 P.2d 759, 761

*tory scheme*, a judgment's *voluntary* payment is not among statutorily authorized methods for averting execution or preventing a lien's attachment pending appeal. Under the time-honored canon known as *expressio unius est exclusio alterius*, legislative approval or inclusion of one thing implies the exclusion of another.[4] Oklahoma's currently effective common-law norm holds that when the appealing party *voluntarily* satisfies the judgment, any errors in it become hypothetical or academic and hence no longer available for review.[5] This *is consistent* with the law's two authorized alternative methods of securing liability on judgments in an appellate court's pipeline. *If a defeated litigant does not desire to invoke one of the two authorized methods, the only alternative*

left is to suffer execution, not to pay the judgment voluntarily.[6]

Confronted with an ambiguous record in this case and acting in conformity with time-honored principles of law, this court previously ordered the trial judge herein to function as its special master and determine *whether the appellants' payment of the judgment was in fact voluntary.*[7] Although the trial judge, who held a nunc pro tunc correction hearing, concluded that the payment had been made "voluntarily," we are not bound by a master's assessment of the record.[8] The transcript of the nunc pro tunc proceeding reveals, without any doubt, the appellants had requested that the payment be disbursed *for fear of losing their farm at a sheriff's sale.*[9] In

---

(1981). *Stay of enforcement pending appeal is a matter of purely legislative origin and exclusive statutory regulation.*

4. See *Newblock v. Bowles,* 170 Okl. 487, 40 P.2d 1097, 1100 (1935).

5. See *Reece v. Chaney,* 28 Okl. 501, 114 P. 608, 609 (1911); *Tinker v. McLaughlin–Farrar Co.,* 29 Okl. 758, 119 P. 238, 239 (1911); *Duncan v. Ratcliff,* 63 Okl. 19, 161 P. 1174 (1916); *Wallace v. Boston Mut. Life Ins. Co.,* 197 Okl. 468, 172 P.2d 629, 632 (1946); *Pixley Lumber Company v. Woodson,* Okl., 556 P.2d 596, 598 (1976).

6. Voluntary compliance with a court's order bars review. *Fulreader v. State,* Okl., 408 P.2d 775, 777 (1965).

7. According to the paperwork on file, the appellants had invoked the terms of 12 O.S.Supp.1983 § 706.2, *supra* note 2, "to secure the release of the money judgment against them...." The appellee, pursuant to 12 O.S.Supp.1983 § 706.3, *infra,* then requested an additional cash deposit. Appellants responded by stating that, conformably to 12 O.S.1981 § 27, *infra,* their "tender of judgment ... may be construed as receipt by the clerk of judgment and costs ... *for disbursement* to Plaintiff...." (Emphasis added.) This authorization was *not voluntarily given;* it was *coerced* by the appellee's countering legal maneuvers.
The pertinent terms of 12 O.S.Supp.1983 § 706.3 are:
"If an appeal of a money judgment is pending before the Supreme Court of Oklahoma, and payment of the amount of judgment has been deposited by the judgment debtor, *the judgment creditor may,* after giving reasonable notice set by the court to the judgment debtor or debtors, *request that the court order the deposit of additional cash;* and *if it appears that the cash deposited is insufficient to cover*

the whole amount of the judgment, including interest, costs, and any attorneys fees, together with costs and interest on the appeal, the court shall order the deposit of additional cash." (Emphasis added.)
The pertinent terms of 12 O.S.1981 § 27 provide:
"Where there is no execution outstanding, *the clerk of the court* in which the judgment was rendered *may receive the amount of the judgment* and costs, and receipt therefor, with the same effect as if the same had been paid to the sheriff on an execution; and *the clerk shall be liable to be amerced in the same manner and amount as a sheriff for refusing to pay the same to the party entitled thereto, when requested....*" (Emphasis added.)

8. A finding of a special master is reviewable *de novo* in this court. *McCullough v. Safeway Stores, Inc.,* Okl., 626 P.2d 1332, 1334 (1981); *Werfelman v. Miller,* 180 Okl. 267, 68 P.2d 819, 820 (1937).

9. In concluding that the appellants had paid the judgment voluntarily, the special master expressly relied upon two cases cited by the appellee, which hold that the threat of a legal right's enforcement (i.e., execution) does not constitute coercion or duress sufficient to make a payment involuntary (see *Radich v. Hutchins,* 95 U.S. 210, 213, 24 L.Ed. 409, 410 (1877); *Kopp v. Fink,* 204 Okl. 570, 232 P.2d 161, 162 (1951)). The trial judge appears to have erroneously reasoned that since the option of a supersedeas bond was still open and available to the appellants, they failed to sustain their burden to convince the trier that the judgment's payment was involuntary. This is a *non sequitur. The gravamen of appellants' quest for relief from dismissal is not that supersedeas was unavailable, but rather that the disbursement of their payment*

these circumstances, the clerk's disbursement is not to be viewed as appellants' voluntary satisfaction of the judgment.[10] In the face of appellants' direction to the clerk for disbursement of the cash deposit—an act precipitated by appellee's own quest for an additional amount of cash to cover costs and interest—appellee's legal remedy was to refuse acceptance of any funds on deposit and forthwith seek a trial court's order to strengthen the amount of cash security by raising it to the level required by the terms of 12 O.S.Supp.1983 § 706.3 (see note 7).

## II.

## THE COURT'S NEWLY CREATED LEGAL NORM IS IN CONTRAVENTION OF OUR STATUTORY LAW

Today, the court creates a new legal norm for appellants' protection from mid-appeal execution by incorporating into the body of our law a textually uncountenanced method of a *judgment's voluntary satisfaction*.[11] The new rule has the potential of generating needless factual disputes in *every* appeal in which the judgment *is paid* rather than being *secured* by one of the two authorized statutory methods. The new rule also will precipitate a rash of restitution suits for recovery of voluntary payments on later-reversed judgments. Moreover, as shown earlier in Part I, today's introduction of the new rule is utterly unwarranted by the record in this case.

The two statutory methods for *suspending* a judgment pending appeal cast on the

judgment debtor the responsibility of *securing the principal as well as the interest that will be due at litigation's end*.[12] By allowing the obligation's voluntary payment, the court implicitly holds that in the event of reversal the liability for interest will shift *to the judgment creditor* who will then be bound to make restitution of both the principal and the accrued interest. In my view, the court's pronouncement favors the *wrong* parties. *It accommodates judgment debtors*—the parties whose appeal *prolongs* the litigation's end. It is they who are *relieved* today from having to pay mid-appeal interest on affirmed judgments—an obligation they would bear if judgment were *not paid* but *secured* by either of the two statutory law's authorized methods. Creditors, on the other hand, do not fare as well; they will be *stuck* with mid-appeal interest when compelled to make restitution following a judgment's reversal. Unlike the court, I would leave undisturbed the legislative allocation of duty to secure mid-appeal interest. It should remain imposed on the appealing debtor. *The party whose appeal postpones the obligation's legal finality should, in the event of affirmance, bear the onus of paying interest accruable during the period between the judgment and mandate dates.*

## III.

## SUMMARY

There are but two alternative statutory methods for a judgment's suspension pend-

was involuntary since it was made in the course of complying with § 706.2 procedure and was intended to parry appellee's countering legal maneuvers.

**10.** See *Guin v. Security State Bank,* 74 Okl. 102, 168 P. 804, 805 (1917), where the court held that *"[a] payment of a judgment to prevent sale under execution or order of sale is not a voluntary satisfaction of the judgment."* (Emphasis added.) See also *Bush v. Aetna Building & Loan Ass'n,* 51 Okl. 529, 151 P. 850 (1915) (the court's syllabus); *Lucas v. First Nat. Bank of Pawnee,* 171 Okl. 606, 43 P.2d 752 (1935) (the court's syllabus ¶ 1).

**11.** The New York case that supplies the very foundation for today's opinion, *Hayes v. Nourse,*

107 N.Y. 577, 14 N.E. 508, 508–509 (1887), is incongruous with our procedural regime which creates *two exclusive statutory methods* for suspending a judgment's effectiveness for enforcement and lien purposes by securing its payment.

**12.** If an appellant chooses to secure the judgment by a bond, the terms of 12 O.S.Supp.1990 § 1007(C)(1), *which are to become effective January 1, 1991,* require that the bond's amount include "costs *and interest* on appeal." If a cash deposit is used in lieu of a bond, its amount is that of the judgment and what "the court determines will cover costs *and interest* on appeal." *Section § 1007(C)(1) clearly evinces continued legislative intent not to shift to the judgment creditor the debtor's burden for securing mid-appeal interest.*

ing its review. Both mandate that the adjudicated obligation be *secured. The law authorizes no other method for avoiding execution or lien attachment pending appeal.* The court's newly created avenue of relief from mid-appeal enforcement plainly contravenes the norms of existing legislative law. *If a third device is indeed desired and should be introduced by case law,* the most compatible nonstatutory method would be a judgment's *payment "under protest,"*[13] *with the two key words placed of record and accompanied by a request that, pending the appeal's disposition, the court clerk deposit the money in an interest-bearing investment account.*[14] This form of relief from mid-appeal enforcement would better conform with, if not stand exactly parallel to, the statutory scheme presently in force for satisfying a public-law obligation owed to the State—e.g., an assessment by the Oklahoma Tax Commission[15] or by the Oklahoma Employment Security Commission.[16]

In sum, *voluntary payment* is not a sanctioned method for securing protection from execution or lien attachment pending appeal. *A judgment debtor who appeals but decides to forgo the two statutorily authorized methods for securing a judgment must suffer execution.* The court's *new* legal norm for avoiding a judgment's mid-appeal enforcement announced today plainly disturbs the symmetry of the statutory regime and the court's extant interstitial jurisprudence condemning voluntary satisfaction of an appealed obligation.

Inasmuch as the record clearly reveals the appellants' *payment* of judgment was *involuntary* because it was not uncoerced by appellee's countering legal maneuvers, I would deny the appellee's motion to dismiss

---

**13.** See *Empire Hardware Co. v. Young,* 27 Misc. 226, 57 N.Y.S. 753, 754 (App.Term 1899), where the court held that *payment of a judgment under protest does not bar an appeal.*

If payment is made *under protest* the judgment would not be viewed as "extinguished by payment." · See *Lindenborn v. Vogel,* 131 A.D. 75, 115 N.Y.S. 962, 963 (1909). Although the court in *Lindenborn* followed the rule announced in *Hayes v. Nourse, supra* note 11 14 N.E. at 508–509, holding that "mere payment of a judgment, whether voluntary or through the medium of an execution, does not bar the right of appeal," it added that *"in a sense the judgment is extinguished by payment."* (Emphasis added.)

**14.** If the interest earned by the investment account is less than the statutory rate of interest due on the judgment, the trial court could require the judgment debtor to make up the difference by mid-appeal payments to be made in accordance with a pre-set periodical schedule.

**15.** See 68 O.S.Supp.1989 § 225, *infra,* whose terms provide that *payment* of the tax assessed by the Oklahoma Tax Commission is a jurisdictional prerequisite for this court's review of the agency's order; if the final decision favors the taxpayer, the amount paid is refunded with interest.

The pertinent terms of 68 O.S.Supp.1989 § 225 provide:

"* * * *

"(c) *As a condition precedent to the right of the taxpayer to prosecute such an appeal,* and as a *jurisdictional prerequisite* of the Supreme Court to entertain such appeal, it is specifically provided that, *if the appeal be from an order of the Tax Commission assessing a tax* or an additional tax, penalties, and interest,

*the taxpayer shall pay to the Tax Commission the amounts assessed.* If, upon a final determination of the appeal the order assessing such tax ... is reversed or modified and it is determined that said tax or part thereof was erroneously or illegally assessed, said amounts so paid by the taxpayer, together with the interest thereon at the rate of three percent (3%) per annum, shall be refunded to the taxpayer by the Tax Commission."
"* * * *" (Emphasis added.)

**16.** Sec 40 O.S.1981 § 3–405, whose pertinent terms provide:

"*As a condition precedent to the right of the employer to prosecute such an appeal,* and as a *jurisdictional prerequisite of the district court to entertain such appeal,* it is specifically provided that, *if the appeal be from an order, judgment, finding, or ruling* of the Commission or its duly authorized representative, *assessing a contribution* or an additional contribution, penalties, and interest, *the employer shall pay to the Commission the amounts assessed. * * *"* (Emphasis added.)
As an alternative method, a bond (for double the amount assessed) *in lieu of a cash payment* is authorized by 40 O.S.1981 § 3–406, whose pertinent terms are:
"In lieu of the cash payment provided for in Section 3–405 *the employer may file with the Commission a bond in double the amount of the contribution, penalties and interest assessed,* conditioned that he will faithfully and diligently prosecute such appeal to a final determination, and, in the event of the order ... be affirmed on appeal, will pay such contributions ... assessed against him." (Emphasis added.)

without altering the current rule which operates to bar appellate review for *all voluntarily paid judgments.*